[No. D061391. Fourth Dist., Div. One. Aug. 20, 2012.]

In re R.V., JR., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
R.V., SR., Defendant and Appellant.

838

## COUNSEL

Lelah Selene Forrey-Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Lisa Storing, under appointment by the Court of Appeal, for Minor.

## OPINION

**HUFFMAN, Acting P. J.**—R.V., Sr. (the father), appeals a judgment declaring his minor son, R.V., Jr. (R.V.), a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivision (j),[1] and removing him from parental custody based on findings R.V. was at substantial risk of sexual abuse by the father, who had sexually abused R.V.'s older sister. The father contends (1) the evidence was insufficient to support the court's jurisdictional finding that R.V. was at substantial risk of sexual abuse within the meaning of section 300, subdivision (j); (2) allowing the petition to be amended to allege harm or risk of harm other than sexual abuse would violate the father's due process rights; and (3) there was no substantial evidence to support the court's dispositional order removing R.V. from his mother's custody. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2011, the San Diego County Health and Human Services Agency (Agency) received a referral that the father had been molesting R.V.'s 10-year-old half sister, Y.R.[2] Y.R. reported the father touched her breasts, put his hand inside her panties and forced her to watch a pornographic movie with him while he exposed his genitals to her. Agency initially did not remove Y.R. or R.V. from the home. Instead, the social worker helped their mother, M.V. (the mother), develop a safety plan that included no contact between the father and the children.

The mother began to question Y.R.'s honesty regarding the allegations of sexual abuse, claiming Y.R. had a history of lying and she had no negative behaviors associated with having been molested. Consequently, Agency filed

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Y.R. is not a subject of this appeal.

petitions in the juvenile court on behalf of both children. As to three-year-old R.V., the petition alleged he was at substantial risk of sexual abuse because the father had sexually abused Y.R. (§ 300, subd. (j).)

Y.R. reported the father had been sexually abusing her on a weekly basis for at least eight months. The father forced Y.R. to lie down on the bed while he tried to remove her skirt. Y.R. resisted by kicking or pinching the father. Y.R. experienced pain when the father fondled her genital area. She said R.V. was often present in her bedroom and observed the father molesting her. She was concerned that R.V. was learning this behavior, and that the father would eventually molest R.V. When R.V. saw the father inappropriately touching Y.R., he would hit him on the back. Y.R. told R.V. to help her by hitting the father to make him stop touching her. Y.R. said the father often bathed naked with R.V. According to the mother, the father routinely kissed both children on the mouth.

The social worker learned that the mother had taken Y.R. to Tijuana for a psychological evaluation in an attempt to confirm that no sexual abuse had occurred. At Agency's request, the court issued a protective custody warrant to remove R.V. and Y.R. from the mother's custody and detained them in out-of-home care. The court ordered a minimum of three supervised visits a week for the mother and no contact between the children and the father.

Y.R. continued to give consistent details about the sexual abuse. She was afraid the mother would never believe the abuse occurred and would continue to accuse her of lying. Y.R. was also afraid the mother wanted to stay in a relationship with the father.

During an interview by the social worker, the mother acknowledged the father may have sexually abused Y.R. as a result of the many problems the mother and father had been having. The mother also admitted her depression caused her to sleep a lot and she failed to attend to the children's needs. The father denied any inappropriate touching. He said Y.R. was manipulative and demanding, and she sometimes did things to make him angry because he was a strict disciplinarian. He believed maternal relatives had coerced Y.R. into making these allegations.

At the contested jurisdiction and disposition hearing, the court received in evidence Agency's various reports. Marisol Olguin, a forensic interviewer at Rady Children's Hospital, Chadwick Center for Children and Families, testified she interviewed Y.R., who disclosed the father had sexually abused

her.[3] Y.R. described the various ways the father had touched her, including fondling and kissing her breasts under her training bra, digital-vaginal penetration which caused her pain, penile-vaginal penetration on one occasion and forcing her to touch his genitals. Y.R. said R.V. was present when some of this occurred. Because R.V. had witnessed the molestation, Olguin considered him to be a potential victim of sexual abuse.

Social worker Lizeth Alvarez testified she had conducted a formal risk and safety assessment in this case, and recommended the court assume jurisdiction and remove the children from the parents' custody. As part of her assessment, Alvarez considered the mother's mental health issues, her alcohol abuse and her inability to protect the children. In Alvarez's opinion, the mother was unable to protect the children because she did not believe the sexual abuse had occurred.

The mother testified, admitting she took R.V. to Tijuana and left him in the care of the father in violation of the no-contact agreement she had with Agency. The mother still did not believe the father had sexually molested Y.R.

After considering the evidence and arguments of counsel, the court sustained the allegations of the petition as to R.V. under section 300, subdivision (j). The court declared R.V. a dependent, removed him from the parents' custody and placed him in foster care.

## DISCUSSION

### I

The father challenges the sufficiency of the evidence to support the court's jurisdictional finding R.V. was at risk of sexual abuse under section 300, subdivision (j). Citing this court's opinion in *In re Maria R.* (2010) 185 Cal.App.4th 48, 63 [109 Cal.Rptr.3d 882] (*Maria R.*), the father asserts evidence that he sexually abused Y.R., a *female* child, either alone or in combination with factors having no established correlation with sexual abuse, is insufficient to show he is likely to sexually abuse R.V., his own *male* child, within the meaning of section 300, subdivision (d).

### A

■ Section 300, subdivision (j) provides a basis for juvenile court jurisdiction where the child's sibling has been abused or neglected, as defined

---

[3] Based on Olguin's qualifications and expertise, the court designated her as an expert in interviewing child sexual abuse victims.

in section 300, subdivisions (a), (b), (d), (e) or (i), and there is a substantial risk the child will be abused or neglected, as defined in any of those subdivisions. (*Maria R., supra,* 185 Cal.App.4th at p. 61.) Where, as here, the petition alleges the child's sibling has been sexually abused as defined in subdivision (d), the court can take jurisdiction under subdivision (j) if the evidence shows there is a substantial risk that the child who is the subject of the dependency proceedings will be sexually abused, as defined in Penal Code section 11165.1, by his or her parent or a member of his or her household. (§ 300, subd. (d); *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1411 [107 Cal.Rptr.3d 923].)

In making its findings under section 300, subdivision (j), "[t]he court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other [facts] the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j); see *In re Joshua J.* (1995) 39 Cal.App.4th 984, 994 [46 Cal.Rptr.2d 491].) By enacting section 300, the Legislature intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of *children who are at risk of that harm.*" (§ 300.2, italics added.) The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194–196 [60 Cal.Rptr.2d 315]; *In re Michael S.* (1981) 127 Cal.App.3d 348, 357–358 [179 Cal.Rptr. 546].)

We review the court's jurisdictional findings for substantial evidence—evidence that is reasonable, credible and of solid value. (*Maria R., supra,* 185 Cal.App.4th at pp. 57, 68; *In re S.A.* (2010) 182 Cal.App.4th 1128, 1140 [106 Cal.Rptr.3d 382].) We do not evaluate the credibility of witnesses, attempt to resolve conflicts in the evidence or determine the weight of the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence supporting a contrary finding. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53 [82 Cal.Rptr.2d 426]; *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610 [29 Cal.Rptr.2d 654].) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947 [124 Cal.Rptr.2d 688].)

B

The issue of whether a parent's sexual abuse of a female child can support a finding that the child's male sibling is at substantial risk of sexual abuse has

been addressed in a number of cases. In *In re Rubisela E.* (2000) 85 Cal.App.4th 177 [101 Cal.Rptr.2d 760] (*Rubisela E.*), the father had sexually abused his 13-year-old daughter. The court held the evidence supported a finding the victim's 11-year-old sister was also at risk of sexual abuse under section 300, subdivision (j) because it was reasonable to assume the father, in the victim's absence, would turn his sexual advances on the victim's sister. (85 Cal.App.4th at p. 197.) The court, however, reversed the jurisdictional findings as to the victim's four brothers, who ranged in ages from two to 12, because there was no evidence they were at risk of sexual abuse based solely on the sexual abuse of their sister. (*Id.* at p. 199.)

In *In re Karen R.* (2001) 95 Cal.App.4th 84 [115 Cal.Rptr.2d 18] (*Karen R.*), the court disagreed with *Rubisela E.*, and held a father who forcibly raped his 13-year-old daughter "reasonably can be said to be so sexually aberrant that both male and female siblings of the victim are at substantial risk of sexual abuse within the meaning of section 300, subdivision (d), if left in the home." (*Id.* at pp. 90–91.) In that case, the evidence showed the male siblings had witnessed other forms of physical abuse by the father and heard their sister report the rape to their mother, who refused to help. (*Id.* at p. 90.) The court noted "[a]lthough the danger of sexual abuse of a female sibling in such a situation may be greater than the danger of sexual abuse of a male sibling, the danger of sexual abuse to the male sibling is nonetheless still substantial." (*Id.* at p. 91.)

In *In re P.A.* (2006) 144 Cal.App.4th 1339, 1345 [51 Cal.Rptr.3d 448], a father who sexually abused his nine-year-old daughter argued the evidence was insufficient to support the jurisdictional findings as to his sons, ages five and eight, because there was no showing the father had touched them inappropriately and they were unaware he had abused their sister. The court disagreed, holding because the father had sexually abused his daughter, he reasonably could be found to pose a risk of sexual abuse to her two brothers. (*Id.* at p. 1343.) The court agreed with the holding of *Karen R.* that "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior." (*Id.* at p. 1347.)

In *In re Andy G., supra*, 183 Cal.App.4th at pages 1414–1415, the juvenile court found a two-year-old boy was at risk of sexual abuse by his father under section 300, subdivisions (d) and (j) as a result of the father's sexual abuse of the son's 12- and 14-year-old half sisters. On appeal, the father challenged the sufficiency of the evidence to support the court's jurisdictional findings, arguing his son was not at risk of sexual abuse because there was no evidence the father had touched him or any other minor male inappropriately. (183 Cal.App.4th at p. 1411.) The court rejected that argument, noting the evidence showed the father exposed himself to one of the girls while the son

was in the room. (*Id.* at p. 1414.) Although the son did not directly witness the incident and was too young to understand what was happening, the court nevertheless concluded this showed "a total lack of concern for whether [the son] might observe [the father's] aberrant sexual behavior." (*Ibid.*) Moreover, the mother had been told about the abuse before it was reported to the police but she refused to believe it was true, allowing an inference she was unable to ensure her children's safety. (*Id.* at p. 1409.) Under these circumstances, the evidence was sufficient to support a finding the son was at substantial risk of sexual abuse. (*Id.* at p. 1415.)

In *In re Ana C.* (2012) 204 Cal.App.4th 1317 [139 Cal.Rptr.3d 686], the father had sexually abused his 11-year-old stepdaughter, Kimberly, who had moderate mental disabilities. On appeal, the court disagreed with the father's argument that he did not pose a risk to the other children in the family home as a result of the sexual abuse of Kimberly. (*Id.* at p. 1330.) The court reasoned: "The nature and extent of the abuse, that it was perpetrated upon a particularly vulnerable child, that the abuse was conducted in a place where it was observed by her younger sister and capable of being observed by other siblings, place all the children who still reside in the home at risk of similar abuse by [the father]." (*Id.* at p. 1332.)

In *Maria R., supra,* 185 Cal.App.4th at page 57, the juvenile court found the father had sexually abused his 14- and 12-year-old daughters in the same manner he had previously molested his two adult daughters when they were around that age. The juvenile court also found the 10-year-old daughter and eight-year-old son were at substantial risk of being sexually abused by the father within the meaning of section 300, subdivision (j). (*Maria R.*, at p. 57.) On appeal, this court held substantial evidence supported the jurisdictional findings as to the 14- and 12-year-old daughters under section 300, subdivision (d), and as to the 10-year-old daughter under section 300, subdivision (j). (*Maria R.*, at pp. 60–62.) With respect to the son, however, we held there was no evidence in the record to support a finding the father had an interest in engaging in sexual activity with a male child, and thus, the father's sexual abuse of the daughters—"as aberrant as it is"—did not establish the son was "at substantial risk of *sexual abuse* within the meaning of subdivision (j), as defined in subdivision (d) and Penal Code section 11165.1." (*Id.* at p. 68.) Significantly, the limited information in the record pertaining to the son showed only that he denied having been inappropriately touched. (*Id.* at p. 69; accord, *In re Alexis S.* (2012) 205 Cal.App.4th 48, 55–56 [139 Cal.Rptr.3d 774] [where father sexually molested adolescent stepdaughters, court affirmed jurisdictional findings that minor sons were at risk of sexual abuse, but reversed dispositional orders removing them from family home because there was no evidence the sons were aware of father's actions and

father had moved out of the home]; *In re Jordan R.* (2012) 205 Cal.App.4th 111, 138–139 [40 Cal.Rptr.3d 222] [this court affirmed juvenile court's finding two-year-old son was not at risk of sexual abuse where father's sexual abuse of niece living in family home did not occur in son's presence and there was no evidence suggesting father had any interest in molesting young boys].)

■ In reaching our conclusion, we noted that generally, brothers of molested girls may be harmed by the fact of molestation occurring in the family, but in the absence of evidence "that the perpetrator of the abuse may have an interest in sexually abusing male children," there is no risk of sexual abuse within the meaning of section 300, subdivision (d). (*Maria R., supra,* 185 Cal.App.4th at p. 67.) We reasoned that section 300, subdivision (d) limits sexual abuse to the definitions in Penal Code section 11165.1 (sexual assault and sexual exploitation), and "*does not include* . . . the collateral damage on a child that might result from the family's or child's reaction to a sexual assault on the child's sibling." (*Maria R.,* at pp. 67–68.) Nevertheless, we held that when a child's sibling has been sexually abused by a parent, the court may assume jurisdiction under section 300, subdivision (j) if it finds, after considering the totality of the child's and sibling's circumstances, there is a substantial risk to the child in the family home under any of the subdivisions referred to in subdivision (j). (*Maria R.,* at p. 65.)

## C

Here, the facts are materially different from those in *Maria R.* and, thus, we are not constrained by our holding in that case with respect to the juvenile court's findings under section 300, subdivision (j) as to R.V. The record shows the father sexually abused Y.R. at least once a week for eight months by touching and kissing her breasts, touching her genitals (including digital penetration), forcing her onto the bed in order to remove her skirt and making her watch a pornographic movie with him while he exposed his genitals to her. (See Pen. Code, § 11165.1, subds. (a) & (b) [defining " 'sexual abuse' " to mean " 'sexual assault,' " including intentional touching of a child's breasts or genital area for purposes of sexual arousal or gratification].) R.V. not only witnessed the father sexually abusing Y.R., but he also participated in helping Y.R. resist the father's unwanted advances, showing he was keenly aware of the inappropriateness of the father's behavior. By repeatedly exposing R.V. to aberrant sexual behavior in this manner, and allowing him to engage in the struggle, the father placed R.V. at risk of sexual abuse within the meaning of section 300, subdivision (d). (See *In re Andy G., supra,* 183 Cal.App.4th at p. 1414 [son was at risk of sexual abuse by father, whose

actions in sexually abusing stepdaughters in son's presence showed total lack of concern for whether his son would observe aberrant sexual behavior]; *In re Ana C., supra*, 204 Cal.App.4th at p. 1332 [sexual abuse was conducted in a place where it could be seen by other siblings, thus placing all the children at risk of similar abuse by the father].) This is unlike *Maria R.*, where the record was devoid of any evidence the son had been exposed to his sisters' sexual abuse or was even aware of it. (*Maria R., supra*, 185 Cal.App.4th at p. 69.)

Also absent from the circumstances in *Maria R.* was any expert testimony regarding risk to the son as a result of the sexual abuse of his sisters. Here, the forensic interview expert, Olguin, testified R.V. was a potential victim of sexual abuse because he had witnessed his sister being molested. The father argues expert opinion cannot change the legal, statutory definition of " 'sexual abuse' " under Penal Code section 11165.1. However, Olguin did not testify R.V. had been sexually abused, nor was her testimony offered to define a legal or statutory term. Instead, Olguin's opinion was probative of whether the father's aberrant sexual behavior toward Y.R. created a risk that R.V. might also become a victim of this behavior. (§ 300, subd. (j).) We cannot reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re Casey D., supra*, 70 Cal.App.4th at pp. 52–53.)

■ The father asserts there was no evidence he had any interest in engaging in sexual activity with a male child. However, several factors, in addition to the father's sexual abuse of Y.R., have an established correlation with risk of sexual abuse to R.V. The father often bathed naked with R.V. and routinely kissed him on the mouth. Although these activities could be entirely innocuous under other circumstances, they become suspicious in the context of the father's audacity to purposely engage in sexually aberrant behavior in front of his three-year-old son. (See *Rubisela E., supra*, 85 Cal.App.4th at p. 198; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1217 [272 Cal.Rptr. 316].) Further, the risk of sexual abuse to R.V. was increased by the mother's refusal to believe the father had molested Y.R. Under these circumstances, the court was required to focus on ensuring the safety, protection and well-being of minors like R.V. who are at risk of sexual abuse. (§ 300.2.)

Again relying on *Maria R.*, the father asserts the evidence was insufficient to support the court's jurisdictional findings under section 300, subdivision (j) because there was no forensic interview or psychological evaluation of R.V., and R.V. did not reveal anything of concern to the social workers. (*Maria R., supra*, 185 Cal.App.4th at p. 69.) However, the language in *Maria R.* was not intended to require a forensic interview or psychological evaluation of a potential victim of sexual abuse in every case. Instead, our reference to the

absence of those types of evaluations and reports was made in the context of a record that contained no evidence as to what particular harm had occurred to the son regarding risk of sexual abuse to him. Consequently, we remanded the matter to the juvenile court to allow Agency to obtain any necessary evaluations to ensure the son's safety and well-being, and to allow Agency to file an amended petition under any of the criteria enumerated in section 300, subdivision (b). (*Maria R.*, at pp. 70, 71–72.) Here, even in the absence of a forensic interview or psychological evaluation, the court properly considered the totality of the circumstances in making its finding R.V. was at risk of sexual abuse by the father.

As we stated in *Maria R.*, a parent's sexual abuse of a daughter does not always mean a son is at risk of sexual abuse by that parent. (*Maria R., supra,* 185 Cal.App.4th at pp. 67–68; see *In re A.G.* (2012) 207 Cal.App.4th 276, 281–282 [143 Cal.Rptr.3d 33].) But the evidence here, and all reasonable inferences that could be drawn from the evidence, allowed the juvenile court to find R.V. was at risk of sexual abuse by the father within the meaning of section 300, subdivision (j).[4]

## II

The father challenges the sufficiency of the evidence to support the court's dispositional order removing R.V. from the mother's custody under section 361, subdivision (c)(1). He asserts the mother was participating in services, she had begun to separate from him, and she understood the importance of abiding by a safety plan to allow him no contact with her children. He further asserts R.V. was negatively affected by the separation from his mother.

## A

Agency responds by arguing the father forfeited his claim R.V. should not be removed from his custody because he did not raise it in the juvenile court. However, the father is not arguing the court erred by removing R.V. from his custody, but instead from the mother's custody. Moreover, he is challenging the court's dispositional order on the ground of insufficient evidence, a claim that is not forfeited even if not raised in the juvenile court. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 464 [40 Cal.Rptr.3d 383].)

■ Agency also asserts the father does not have standing to argue the court erred by removing R.V. from the mother's custody. Ordinarily, an

---

[4] In light of our holding, we need not address the father's contention his due process rights would be violated if we affirmed the jurisdictional finding on a ground other than risk of sexual abuse.

appellant cannot urge errors that affect only another party who does not appeal. (*In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261 [28 Cal.Rptr.2d 313]; see *In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1807 [54 Cal.Rptr.2d 560]; *In re Frank L.* (2000) 81 Cal.App.4th 700, 703 [97 Cal.Rptr.2d 88].) However, "[u]ntil parental rights are terminated, a parent retains a fundamental interest in his or her child's companionship, custody, management and care." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053 [81 Cal.Rptr.3d 556].) Because R.V.'s placement in out-of-home care has the potential to adversely affect the father's own interests in reunifying with R.V., the father has standing to challenge the court's dispositional order removing custody from the mother and placing R.V. in foster care.

B

Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1653–1654 [54 Cal.Rptr.2d 722].) The jurisdictional findings are prima facie evidence the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate. (*In re A.S.* (2011) 202 Cal.App.4th 237, 247 [134 Cal.Rptr.3d 664].) We review the court's dispositional order for substantial evidence. (*In re Kristin H.*, at p. 1654.)

Here, the court's dispositional order was based on findings, supported by the evidence, that R.V. was at substantial risk of being sexually abused by the father, who sexually abused Y.R. The mother accused Y.R. of lying and was persistent in her attempts to challenge Y.R.'s disclosure of sexual abuse by the father, showing she would be unable to protect R.V. against the risk of being sexually abused. Although the mother was engaged in services and making progress, she testified at the disposition hearing that she still did not believe the father had molested Y.R. Despite agreeing to abide by the safety plan, the mother had previously violated the court's order for no contact between the father and the children. As the juvenile court noted, the mother needed to make significant progress before she could provide R.V. with a safe home. Substantial evidence supports the court's finding R.V. would be at substantial risk of harm if returned to the mother's custody and there were no reasonable means by which he could be protected without removal. (§ 361, subd. (c)(1).)

## DISPOSITION

The judgment is affirmed.

Haller, J., and McDonald, J., concurred.