Filed 5/19/15  In re Eliana R. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ELIANA R. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B260466 <br><br> (Los Angeles County <br> Super. Ct. No. CK94418) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> GREGORY R., <br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa T. Sullivan, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

Gregory R. (Father) appeals from an order terminating his parental rights under Welfare and Institutions Code section 366.26[1] as to his two daughters, Eliana R. and D.R. He contends the juvenile court erred in terminating parental rights because the girls' mother, Emmy R. (Mother), did not receive proper notice of the section 366.26 hearing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2012, the Department of Children and Family Services (DCFS) detained four-month-old Eliana R. after the Los Angeles County Sheriff's Department executed a search warrant at Father and Mother's home and took Father into custody. Based on the presence of narcotics paraphernalia in the home, Father's arrest, and both parents' history of drug use, DCFS took Eliana into protective custody.

DCFS filed a petition under section 300, subdivision (b), alleging that Eliana was at risk of serious physical harm or illness due to the parents' neglect and substance abuse. The parents pled no contest and at the jurisdiction hearing on March 20, 2013, the juvenile court sustained the petition as amended. It found Father "created an endangering home environment for the child in that a drug pipe and hypodermic needle were found in the child's home. The child's father has a history of substance abuse, including heroin. The father has a criminal history of convictions of Possession of a Controlled Substance, Use/Under the Influence of a Controlled Substance, DUI Alcohol/Drugs. Such an endangering home environment established for the child by the father and said substance abuse by the father endangers the child's safety and places the child at risk of physical harm." (Count b-1.) The court further found that Mother "has an unresolved history of substance abuse including methamphetamines. Further, on 11/01/2012, drug paraphernalia were found in the child's home. The mother's substance abuse placed the

---

[1] All further statutory references are to the Welfare and Institutions Code.

child at risk of physical harm." (Count b-3.) The court ordered Mother and Father to attend drug rehabilitation with aftercare, comply with random or on-demand drug testing, participate in a 12-step program, and attend parent education.

Mother subsequently gave birth to D.R. On May 8, 2013, DCFS filed a section 300 petition as to D.R., alleging that Mother tested positive for amphetamines at the time of D.R.'s birth. According to the detention report, D.R. also had a positive toxicology screen and was exhibiting withdrawal symptoms.

Father pled no contest to the petition, and the matter was adjudicated against Mother. The juvenile court sustained the petition based on the failure to protect D.R. (§ 300, subd. (b)) and her sibling, Eliana (*id*., subd. (j)). The court again ordered Mother to participate in a drug program, drug testing, and parenting classes, as well as counseling. It denied reunification services to Father under section 361.5.

By the November 6, 2013 review hearing, Mother was not in compliance with her case plan, and the juvenile court terminated her reunification services. It set the matter for a section 366.26 hearing on termination of parental rights on March 5, 2014.

Father was present at the March 5 hearing, but Mother was not. The court found due diligence was completed as to notification for Mother as required by law. Father and Mother's attorneys were served with notice that the hearing was continued to June 18.

Father was again present on June 18, and Mother was not. The court found due diligence was completed as to Mother as required by law. The case was continued to August 21. The court ordered DCFS to give Mother's counsel notice of the hearing.

Again on August 21, Father was present, but Mother was not. The court found due diligence as to Mother. The case was continued to November 18.

On November 18, Father was present, and Mother was not. Counsel for DCFS asked the court to find proper notice to Mother based on the due diligence found on March 5 and notice of the hearing sent to Mother's counsel on August 22. Mother's counsel objected that due diligence must be reasonable, and it was not reasonable to have done nothing to locate Mother since the March 5 hearing when the section 366.26 hearing

3

was set.  Counsel also complained that there was no affidavit as to DCFS' efforts to locate Mother or proof of service by certified mail.

The court stated that if DCFS could provide it with a date-stamped certified mail receipt, that would be sufficient for proof of service.  As long as the proof of service was compliant with the law, the due diligence finding on March 5 was sufficient.

Father's counsel then requested a contested hearing on the grounds reasonable services were not provided and termination of parental rights would interfere with the children's relationship with their half-siblings—Father's adult children.  The court denied the request for a contested hearing.

After a recess, DCFS' counsel provided the court with the proof of service, and the court found notice to Mother was proper.  Mother's counsel noted that was over Mother's objection, and Father's counsel added it was over Father's objection as well.  The court then terminated Mother's and Father's parental rights over the children.

## DISCUSSION

Father contends notice to Mother was defective, and the defective notice was a structural defect requiring reversal of the order terminating parental rights.  He further contends he has standing to challenge the order on this ground based on his and Mother's joint interest in parenting their children.  We conclude Father has no standing to raise the issue of notice to Mother on appeal.

It is well established that "[s]tanding to appeal extends only to a 'party aggrieved' by the order appealed from.  [Citations.]  'To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision.  A nominal interest or remote consequence of the ruling does not satisfy this requirement.'  [Citation.]  The ability to appeal does not confer standing on parties not aggrieved by the order from which the appeal is taken.  [Citations.]

"Standing to challenge an adverse ruling is not established merely because a party takes a position on an issue that affects the minor.  [Citation.]  Without a showing that the

4

party's personal rights are affected by a ruling, the party does not establish standing. [Citation.] . . . In sum, a would-be appellant 'lacks standing to raise issues affecting another person's interests.' [Citation.]" (*In re J.T.* (2011) 195 Cal.App.4th 707, 717; accord, *In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806.)

Similar to the instant case, in *In re Caitlin B.* (2000) 78 Cal.App.4th 1190 the mother appealed from an order terminating her parental rights, challenging the order on the ground her child's alleged fathers were not provided with notice of the dependency proceedings. (*Id.* at pp. 1191-1192.) The court held she had no standing to raise the issue. (*Id.* at p. 1193.) The court acknowledged the principle that, "'Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests. This is a matter of first party standing.' [Citation.] In the absence of such intertwined interests, 'a parent is precluded from raising issues on appeal which did not affect his or her own rights.' [Citation.]" (*Ibid.*) The court explained that the mother's "interest is limited to continuation or termination of her own parental rights. Her interests do not interweave with those of a natural father whom she cannot identify and with whom she has no continuing relationship. Thus, she has no interest in asserting either his statutory right to a particular form of notice or his more generalized due process right to be heard, both of which are personal to him as they relate to his parental rights." (*Id.* at pp. 1193-1194.)

*In re R.V.* (2012) 208 Cal.App.4th 837, on which Father relies, is distinguishable. In *R.V.*, the son was removed from his parents' custody based on the allegation the father had abused the older sister and the mother failed to protect the children. (*Id.* at pp. 840-842.) The father did not challenge the son's removal from his own custody, and the question was whether the father had standing to challenge the son's removal from the mother's custody. (*Id.* at p. 848.) The court found he did, explaining, "Ordinarily, an appellant cannot urge errors that affect only another party who does not appeal. [Citations.] However, '[u]ntil parental rights are terminated, a parent retains a fundamental interest in his or her child's companionship, custody, management and care.' [Citation.] Because R.V.'s placement in out-of-home care has the potential to adversely

5

affect the father's own interests in reunifying with R.V., the father has standing to challenge the court's dispositional order removing custody from the mother and placing R.V. in foster care." (*Id.* at pp. 848-849.)

Here, Father's parental rights have been terminated, and he does not challenge the termination of his own parental rights on substantive grounds. He no longer has any interests in his children's "'companionship, custody, management and care'" (*In re R.V.*, *supra*, 208 Cal.App.4th at p. 849) which would give him standing to challenge rulings affecting the children's relationship with Mother.

Father also attempts to distinguish *Caitlin B.* on the ground he continued to maintain a relationship with Mother, whereas the mother in *Caitlin B.* could not identify the natural father and had no continuing relationship with him. (*In re Caitlin B.*, *supra*, 78 Cal.App.4th at p. 1193.) While these facts were mentioned in *Caitlin B.*, the basis of the court's holding was that the mother's "interest is limited to continuation or termination of *her own* parental rights." (*Ibid.*, italics added.) This is consistent with *R.V.*'s holding that prior to termination of parental rights, a parent retains an interest in a child's relationship with the other parent. Once parental rights are terminated, a parent loses that interest and has no standing to challenge an order affecting only the other parent's relationship with the child. Father therefore has no standing to challenge the order terminating parental rights on the ground Mother received defective notice of the hearing on termination.

This conclusion is also consistent with this court's ruling in *Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2000) 83 Cal.App.4th 947. In that case, both parents' parental rights were terminated at a single hearing. The father appealed, but the mother did not. The appellate court reversed the order terminating the father's parental rights based upon improper notice to him. After remand, the juvenile court reinstated the father's parental rights, as well as the mother's. This court found the reinstatement of the mother's parental rights to be error. (*Id.* at p. 949.) Relying on *In re Caitlin B.*, we noted "one parent, here, [the mother], cannot benefit from an error in terminating the other parent's rights 'so as to make into error an errorless termination of

6

*her* parental rights.' [Citation]" (*Los Angeles County Dept. of Children & Fam. Services v. Superior Court*, *supra*, at p. 949.)

## DISPOSITION

The order is affirmed.

STROBEL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.