Filed 5/26/16  In re L.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.B. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TERESA R., <br><br> Defendant and Appellant. | F072049 <br><br> (Super. Ct. Nos. 15CEJ300088-1, 15CEJ300088-2, 15CEJ300088-3, 15CEJ300088-4) <br><br> **OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Mara L. Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Teresa R. (mother) challenges the juvenile court's dispositional and jurisdictional orders, claiming the Fresno County Department of Social Services (department) and the juvenile court breached statutory duties to identify and locate relatives as placement options and to notify them about participating in the dependency proceedings. We affirm.

## STATEMENT OF THE FACTS AND CASE

A Welfare and Institutions Code section 300[1] petition filed April 1, 2015,[2] alleged L.B., M.B., J.B. and N.R., four years old, two years old, one year old, and five months old respectively, were at risk of harm due to mother's substance abuse issues, a filthy and unsanitary home environment, and mother's failure to obtain medical treatment for the children. As to the oldest two, it was also alleged they were left without provision for support from their father, Leonardo B., Jr., whose whereabouts was unknown[3].

*Detention*

The April 2 report filed in anticipation of detention states that when the social worker went to mother's home on March 26, it was found to be filthy and unhealthy, with cockroaches, rat droppings, a urine filled mattress on the floor and minimal food in the house. There were no diapers in the home and the children were dirty. A referral had been received that mother was an intravenous drug user and "passed out," leaving the children without supervision. One of the children was reported to have a large knot on the forehead for which mother had not sought medical attention. Mother received Social Security income, cash aid, WIC (Women, Infants and Children Program) and food

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]  All further date references are to 2015, unless otherwise stated.

[3]  Leonardo B., Jr. is the presumed father of L.B. and M.B., and the alleged father of J.B. Bennie M. is the alleged father of N.R. But mother later said Leonardo B., Jr., was the father of all four children. Neither father is a party to this appeal.

stamps monthly. Mother stated her mother-in-law would bring her food and diapers if she needed.

The social worker contacted the children's maternal grandmother, who lived downstairs from mother. Maternal grandmother agreed to assist mother with milk, formula and diapers. Her home was described as "much cleaner" than mother's. Maternal grandmother acknowledged mother gave her part of her food stamp allotment each month. She was advised against this, as mother needed it for herself and the children.

Mother agreed to get the necessary supplies for the children, and the social worker vowed to return to check on her. Mother then sent N.R. to stay with a paternal aunt and uncle for a few days. N.R. was described by the paternal aunt as very small, malnourished, filthy and dehydrated, and was eventually taken to the hospital. The paternal aunt told the social worker either she or her sister would be filing for guardianship of N.R. on April 1.

The three older children were detained on March 28, after the situation in mother's home failed to improve.

At the team decisionmaking meeting April 1, mother stated she did not want N.R. to live with paternal aunt and uncle. N.R. was removed from their care and a protective hold placed on her. Mother stated Leonardo B., Jr. was N.R.'s father, not Bennie M., as initially reported. Mother stated she wished the children returned to Leonardo B., Jr.'s custody, even though she had an active restraining order out against him, he used drugs, and had a criminal history. She provided the name of her brother's girlfriend, Melinda G., and requested she be assessed for placement.

In the summary report of the team decisionmaking meeting of April 1, the department stated one of its "ACTION STEPS" (boldface and underlining omitted) would be to "assess any suitable relatives and/or mentors for placement." The deadline for this step was "ongoing."

The April 2 report filed in anticipation of detention recommended the children be detained. At the time, the oldest three children were placed together in one foster home; the youngest in another. These placements were described as pending the location of "a suitable relative or mentor home." The report listed Melinda G. as a mentor to be considered for possible placement, and that the department would continue to actively search for relatives.

Mother was appointed counsel on April 2, but she was not present at the detention hearing on April 8. Mother's counsel stated she sent mother a letter, but mother had not contacted her. Counsel then stipulated to the detention allegations. The juvenile court found continuance in mother's home was contrary to the children's welfare and that reasonable services were made to prevent removal. The juvenile court found the "[s]uitability of relatives is not yet determined," and "temporary placement is a general placement order." The juvenile court directed further that the children "be detained if possible in relative home [*sic*] and if not a licensed home or other suitable facility .…" Mother was ordered to disclose information regarding maternal and paternal relatives. Visitation was ordered for mother and for "any approved relative or mentor."

*Jurisdiction*

A declaration of due diligence, filed April 24 in anticipation of jurisdiction, showed extensive efforts were made to locate the father of the three oldest children. No declaration of due diligence was filed regarding any other relatives.

The report prepared in anticipation of jurisdiction repeated the relative placement information in the detention report, and provided no new information of any search efforts for relatives or efforts to notify relatives of the proceedings.

Mother was not present at the April 28 jurisdiction hearing. Following mother's counsel's request that the matter be set for trial because she had been unable to contact mother, the juvenile court set a settlement conference date for June 9 and trial date for June 16. The juvenile court found mother's absence "unexcused."

Mother was again not present at the June 9 settlement conference. According to mother's counsel, mother disagreed with some of the allegations in the petition (namely that her home was dirty and that there was no food in the refrigerator) and asked that the June 16 trial date be confirmed. Because mother was not present, the juvenile court denied the request, vacated the June 16 trial date, and found the allegations of the petition true.

*Disposition*

The report filed in anticipation of disposition on June 23 reported the children were currently placed in licensed foster homes "pending that a suitable relative or mentor home is located." Reunification services were recommended for mother.

The section of the report titled "RELATIVE PLACEMENT INFORMATION" (boldface and underlining omitted) is identical to that of the detention and jurisdiction reports, providing no new information or steps taken. The case plan attached to the report did not address any outreach efforts by the department to locate suitable relatives. The only mention of relatives in the case plan is under the heading, "CHILD(REN)-GRANDPARENT(S) VISITATION," (boldface and underline omitted) and indicates grandparent visits will be arranged monthly "upon request from grandparents." There was no indication any grandparent was notified of their right to request visits.

At the disposition hearing on June 23, mother was again not present and mother's counsel submitted on the department's recommendation. The juvenile court ordered reunification services as recommended by the department. The juvenile court found mother's progress "so far has been none," and "[c]ontinued placement … is necessary" and "current [placement] is appropriate." The juvenile court ordered placement "will be where it has been," identifying by name the current foster parents for each child.

*Appeal*

Mother filed a notice of appeal, followed by a motion to construe her notice of appeal. On October 1, we granted mother's motion, deeming the notice of appeal to be

5.

an appeal from the jurisdictional findings of June 9 and of the dispositional findings and orders of June 23. We further construed the notice of appeal to include the hearings dates of April 2, April 8, June 9 and June 23.

## DISCUSSION

Mother contends the department conducted no required relative investigation from the time the children were detained in March until disposition on June 23. She also contends that, despite knowing the identity of some relatives, the department failed to ask mother or either father to identify "all of their relatives," and provided no written notification of the proceedings or need for placement to any relatives. Respondent contends mother has forfeited this issue by failing to raise it below. We agree with respondent.

*Relative Search and Notification*

When a child is removed from parental custody by dependency proceedings, social workers and juvenile courts must investigate and consider the child's relatives for potential placement. We quote below the statutes in effect at the time of the children's removal in 2015.

Within 30 days of a child's removal from parent custody, the social worker "shall use due diligence" (§ 309, subd. (e)(3); Cal. Rules of Court, rule 5.637(a))[4] "to identify and locate all grandparents, … adult siblings, and other adult relatives of the child, as defined in paragraph (2) of subdivision (f) of Section 319, including any other adult relatives suggested by the parents." (§ 309, subd. (e)(1).) Section 319, subdivision (f)(2) defines "relative" as

> "an adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship, including stepparents, stepsiblings, and all relatives whose status is preceded by the words 'great,' 'great-great' or 'grand' or the spouse of any of these persons, even if the marriage was

---

[4] All further rule references are to the California Rules of Court.

6.

terminated by death or dissolution. However, only the following relatives shall be given preferential consideration for placement of the child: an adult who is a grandparent, aunt, uncle, or sibling of the child."

The social worker shall provide located relatives with written notice, and oral notice when appropriate, of the child's removal (§ 309, subd. (e)(1)(A)) and "[a]n explanation of the various options to participate in the care and placement of the child and support for the child's family, including any options that may be lost by failing to respond." (§ 309, subd. (e)(1)(B); rule 5.534(f)(3).)

When a child is removed from parental custody, "[t]he court shall order the parent to disclose to the social worker the names, residences, and any other known identifying information of any maternal or parental relatives." (§ 319, subd. (f)(3); rule 5.678(e)(2).) Mother was ordered at detention to disclose information regarding maternal and paternal relatives.

*Forfeiture*

By failing to raise below the issue of the sufficiency of the department's search and notification of relatives, mother has forfeited this issue on appeal. (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) Dependency cases are not exempt from the forfeiture doctrine. (*Ibid.*) "The purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected." (*Ibid.*) Any other rule would ""'"permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not."'" [Citations.]" (*In re Christian J.* (1984) 155 Cal.App.3d 276, 279.) Here, no party brought to the attention of the juvenile court any alleged deficiencies on the part of the department in identifying parental relatives.

Mother acknowledges that she did not raise the issue of relative search, notification, assessment and placement below, and that neither her attorney nor the attorney for the children objected to the juvenile court's failure to make the required

7.

findings on the issue. But she claims the issue was not forfeited. We address and reject each of her contentions.

We first reject mother's claim that her argument is not forfeited for failure to object below because a challenge to the juvenile court's dispositional order on grounds of insufficient evidence is a claim not forfeited even if not raised below, citing *In re R.V.* (2012) 208 Cal.App.4th 837, 848. Mother's argument, however, fails to distinguish between findings which are jurisdictional, for which the department must carry its burden of proof, and other statutory requirements which are not fundamental to the juvenile court's jurisdiction to act.

In *In re R.V., supra,* 208 Cal.App.4th at page 848 the father challenged the sufficiency of the evidence to support the juvenile court's dispositional order removing the child from the mother's custody under section 361, subdivision (c)(1). Here, mother does not challenge the sufficiency of the evidence in support of the juvenile court's finding that it was necessary to remove the children from her custody pursuant to section 361, subdivision (c)(1). Instead, mother's argument focuses on the sufficiency of the record concerning relative location and notification, which are not dependent on the department's burden to prove jurisdiction or to prove that removal is necessary. Instead, while these are important considerations, they are statutory in nature, and do not involve the fundamental jurisdiction of the court to act. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 412; see also *In re B.G.* (1974) 11 Cal.3d 679, 689 [mother forfeited right to raise inadequacy of notice on appeal when she appeared at subsequent hearings with counsel and failed to challenge validity of jurisdictional order].)

Second, we reject mother's claim that the issue was not forfeited because relative search and notification rights lie with the children, and should therefore be treated as analogous to a tribe's rights under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). As argued by mother, because an ICWA notice issue is not forfeited by a parent's failure to object below, the relative search and notification issue should likewise

8.

not be deemed forfeited. But, as correctly noted by respondent, the children here, unlike the tribe in an ICWA case, were already a party and represented by counsel. Nor did the children appeal the disposition in this matter.

Finally, we decline mother's request that we address the issue on the merits at our discretion. The interests of justice weigh in favor of the forfeiture rule, and the policy underlying the rule discussed above, particularly where mother failed to attend all but the initial hearing where she was appointed counsel and mother's counsel submitted on the department's disposition report and recommendation.

## DISPOSITION

The orders of the juvenile court are affirmed.


_____
FRANSON, J.


WE CONCUR:

_____
LEVY, Acting P.J.

_____
DETJEN, J.

9.