Filed 1/22/21  In re Camila M. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Camila M., a Person Coming Under the Juvenile Court Law. | B307092 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRYAN P.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP00692A) |

APPEAL from an order of the Superior Court of Los Angeles County, Victor G. Viramontes, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father Bryan P. appeals from the dispositional order removing his then nearly three-year-old daughter, Camila M. from his custody. Father argues that because he was a noncustodial parent, had no right to custody of Camila, and never requested custody of her, the court had no legal basis to remove her from his care under Welfare and Institutions Code section 361, subdivisions (c), (d), or section 361.2, subdivision (a).[1] Father does not challenge the juvenile court's jurisdictional findings, or any other aspect of the court's dispositional order. Respondent contends father forfeited any challenge to the removal order by failing to object, and that removal was warranted under section 361, subdivision (d), which applies to noncustodial parents. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) in December 2019, after mother and father were involved in a domestic violence incident. (Mother was found to be nonoffending, and is not a party to this appeal.) As mother was driving, father attempted to remove Camila from her car seat. Mother told father it was unsafe, and slammed the brakes, not realizing the child had already been removed from her seat. Camila hit her head on the console as the car abruptly stopped, causing a small bump. Father became enraged, dragged mother from the car, and repeatedly punched her until bystanders intervened. According to mother, father was holding Camila as he struck her, and Camilla was yelling "Mommy!" Father was

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

arrested and charged with inflicting corporal injury on a spouse. Father ultimately pled no contest to a violation of Penal Code section 273.5 and was sentenced to nine days in jail and probation. The court also issued a criminal protective order protecting mother.

Mother and father were no longer in a romantic relationship. Mother and Camila lived with mother's boyfriend and maternal relatives. According to mother, Camila lives "primarily with mother" but has overnight visits with father. One time, father refused to return Camila to mother, and she left Camila in his care after paternal grandmother threatened to call police to report that mother was trespassing. According to mother, father's contact with Camila is inconsistent.

Father lives with paternal grandmother. Their home was filthy, with trash, clothes, dishes, and dog feces strewn on the floor. Father confirmed that Camila visits him there, but told the Department she rarely sleeps over. However, he tries to see her daily. According to father, there was a family law case concerning Camila, but they had not yet established a visitation schedule. Father has a diagnosis of severe depression, but does not take medication. He was no longer receiving mental health services due to insurance issues.

According to paternal grandmother, father was in the process of obtaining a family law order, and there was a mediation scheduled for January 2020. However, neither father nor paternal grandmother ever provided paperwork concerning the family law case to the social worker.

Mother denied that there was a family law order and said she "wants nothing to do with father," but then told the social worker she has "full custody and father only has visits." She said

3

father had not served her with any paperwork pertaining to custody or visitation.

Father has a history of domestic violence. In July 2019, father repeatedly punched paternal grandmother on her face and body, and choked her so hard that she saw white and could not breathe. He pushed and kicked paternal aunt when she tried to intervene to help their mother.

In August 2019, father threatened to kill his then girlfriend after she refused his marriage proposal. He put a knife to her throat, choked her and beat her. He also threatened to kill himself if she left him.

At the detention hearing, father's counsel represented that father has daily contact with his daughter and is her "main caregiver." Father also filed a "Statement Regarding Parentage" stating that Camila lived with him "off and on" since birth, and spends time with his family every week.

Mother's counsel represented that the child only had "sporadic" overnight visits with father, and argued that he had not achieved the status of a presumed father. The court found father to be a biological father, and deferred addressing whether father was entitled to presumed father status until the adjudication hearing. The court detained Camila from father, and released her to mother.

At the adjudication hearing, the parties submitted on the Department's reports, and no oral testimony was taken. The court sustained allegations in an amended petition against father, based on his mental health, domestic violence history, and the car seat incident. Mother was found to be nonoffending.

Father did not argue against removal, or contend removal was unwarranted. The court removed Camila from father, and

4

ordered father to participate in reunification services. The court's minutes state that removal was warranted under "sections 361(a)(1), 361(c), 361(d) and 362(a)." The court did not further address father's paternity status. This timely appeal followed.

## DISCUSSION

Father contends there is no evidence he was a custodial parent, or otherwise entitled to custody, and he never requested custody of Camila, so there was no statutory basis for the court's removal order under section 361, subdivisions (c), (d) or section 361.2, subdivision (a).[2]

Respondent argues this issue was forfeited because father never objected on this basis below. Notwithstanding father's failure to object, we exercise our discretion to reach the merits of his claim. (See *In re Dakota J.* (2015) 242 Cal.App.4th 619, 630 [whether a juvenile court has statutory authority to order removal under § 361, subd. (c) presents a question of law which may be reviewed in absence of an objection below]; see also *In re R.V.* (2012) 208 Cal.App.4th 837, 848 [a claim that the evidence is insufficient to support a dispositional order "is not forfeited even if not raised in the juvenile court"].)

Section 361, subdivision (c) applies only to removal from custodial parents with whom the child resided at the time the petition was initiated. (*In re Abram L.* (2013) 219 Cal.App.4th

---

**2** It appears the parties and the court treated him as a presumed father at the jurisdiction and disposition hearing. We will assume he is a presumed father for purposes of resolving this appeal, without prejudice to the juvenile court making a finding in future proceedings that he is not a presumed father, if the circumstances warrant such a finding. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 454–455.)

5

452, 460; see also § 361, subd. (c) ["A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated . . . ."].) The evidence is conflicting, but we will assume without deciding that Camila did not reside with father for purposes of removal pursuant to section 361, subdivision (c).

A noncustodial parent must request custody for section 361.2, subdivision (a) to apply, and section 361.2 applies only to nonoffending parents. (*In re John M.* (2013) 217 Cal.App.4th 410, 425; see also § 361.2, subd. (a) [when parent with whom the child did not reside when the conditions giving rise to jurisdiction arose requests custody, the court shall place the child with that parent unless it finds it would be detrimental to do so].)

Father did not request custody of Camila, the court never made a detriment finding under section 361.2, and father is an offending parent. Therefore, section 361.2 does not apply.

But section 361, subdivision (d) supports removal. Section 361, subdivision (d) provides that "[a] dependent child shall not be taken from the physical custody of his or her parents . . . *with whom the child did not reside at the time the petition was initiated*, unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's parent's . . . physical custody." (Italics added.) This

section controls removal of children from noncustodial parents. (See *In re S.S.* (2020) 55 Cal.App.5th 355, 373.)

Father contends he did not have a "right to custody" as required by section 361, subdivision (d). Whether or not father had a "right to custody," section 361, subdivision (d) applies when there is clear and convincing evidence of a substantial danger for the parent *either* to live with the child *or* otherwise exercise the parent's right to physical custody. The family law status of the case was unclear, with mother claiming to have full custody and father claiming the child consistently lived with him. The record does not include an order establishing mother's exclusive custody of the child. Regardless of the legal custody arrangement, it is undisputed that father visited with Camila and kept her overnight. There was ample evidence to support a finding that there would be a "substantial danger" for father "to live with the child or otherwise exercise [his] right to physical custody." (*Ibid.*)

Father also contends the Department never attempted to prove that section 361, subdivision (d) applied, and that the juvenile court did not apply section 361, subdivision (d) when making its removal order. But the court's minutes expressly state that removal was warranted under "sections 361(a)(1), 361(c), 361(d) and 362(a)." Father did not object or offer any argument against removal, and there was no argument concerning the legal basis of the removal order. Disposition proceeded on the basis of the Department's reports, which contained ample evidence, discussed *ante*, concerning custody and the danger of Camila living with father.

We see no prejudice to father from the removal order. Although an erroneous removal order may prejudice a parent by interfering with a parent's liberty interest in caring for their

7

child, and by "start[ing] the clock running on reunification efforts" leading to the potential termination of parental rights (*In re Dakota J.*, *supra*, 242 Cal.App.4th at pp. 630–632), we find no prejudice here, where father has not challenged jurisdiction, or any other aspect of the court's dispositional order (such as the requirement that he participate in services and that his visitation be monitored).

## DISPOSITION

The removal order is affirmed.


GRIMES, J.

WE CONCUR:



BIGELOW, P. J.



STRATTON, J.