Filed 2/5/21  In re So.H. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re So.H. et al., Persons Coming Under the Juvenile Court Law. | B306822 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>L.P.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP02395A-C) |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee. Affirmed.

Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother L.P. has three daughters, So.H. (now nine), Sa.H. (nearly seven), and S.S. (now two). S.S. has a different father than the older girls. Mother appeals the jurisdictional order declaring So.H. and Sa.H. dependents under Welfare and Institutions Code section 300, subdivision (a),[1] based on domestic violence perpetrated by S.S.'s father, A.S. She also challenges the jurisdictional findings based on her substance abuse as to all three children, the dispositional order removing all three children, and the order terminating jurisdiction over the older two girls with a family law order granting custody to their father, D.H. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) in April 2020, following a domestic violence incident between mother and A.S. According to the reporting party, father punched mother in the face, choked her, and bit her until she bled. Mother reported there were "[t]oo many [domestic violence incidents between her and A.S.] to count."

So.H. called 911 to report the incident. The reporting party said the incident occurred away from home, and the children were not present but heard the fight over the phone.

Mother told responding law enforcement officers she had taken a Lyft to meet father at a parking lot following his release from jail. According to the police report, father is a member of the PJ Crips gang, with a moniker "Nutcase." Mother was offered but declined an emergency protective order.

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

When a Department social worker interviewed So.H. and Sa.H., they said they did not witness the incident but they heard mother scream for help over the phone. They denied witnessing any other incidents of domestic violence. When asked about substance abuse, Sa.H. responded "not in front of us, mommy goes to the bathroom."

Mother admitted to ongoing domestic violence and harassment by A.S. She "tried to 'get away' " from him, but he would show up at her work, attack her, stalk her on social media, and threatened they would be "together till death." He had been in and out of jail over the course of their relationship, and she was not sure where he was staying. The Department was unable to locate A.S. for an interview.

Mother denied she met A.S. at a parking lot. She told the social worker she was at a friend's house, and someone had invited father to come over. She did not leave because she did not have transportation. She later changed her story and told the social worker that father prevented her from leaving by blocking the doorway. The children were not there; they were with maternal grandmother. Mother and A.S. called the children so he could speak with them. He became enraged after one of the children mentioned an upcoming birthday party for a friend, believing the child was referring to a male friend of mother's. They began to argue about seeing other people, and A.S. punched mother in the jaw. She "tried defending herself" but he overpowered her, pulled her down a flight of stairs, and dragged her outside. He choked her and knocked her dentures out of her mouth. Mother tried to push him away with a pole, but he kept coming after her, telling her "on Crip I'm going to kill you." He eventually fled the scene. According to mother, she had an active

restraining order against A.S. at the time of the attack and was participating in domestic violence services, although she was unable to provide any documentation to the social worker.

Mother denied using drugs. After the social worker confronted mother with a picture of her smoking marijuana posted on her social media account, mother became upset, insisting marijuana is legal and that she should not be required to test. When the social worker cautioned about the importance of having proper supervision for the children while using, mother reported she is "not with her children every day and that they are in the care of maternal grandparents and great-grandmother." She then implied that it was okay to smoke in front of the children but then said she only smokes outside.

Mother tested positive for marijuana on April 22, 2020. According to D.H., the father of the So.H. and Sa.H., mother smoked marijuana in front of the children, and in the car with them. Mother was an "avid user" of marijuana while they were in a relationship.

Maternal grandmother was concerned about domestic violence between mother and A.S. A.S. was not allowed at her home but would often show up at other family members' houses looking for mother.

Maternal great-grandmother reported that mother and the children had resided with her for the last two years. She considered seeking custody of the children to provide them with stability, as mother would move from place to place, and the children would often miss school, which was interfering with their learning. Mother would "go[] off with her friends" and was unsettled.

D.H. reported that mother made false domestic violence allegations against him in 2011. His CLETS report confirmed the charge had been dismissed. According to D.H., mother told him A.S. once held mother against her will at gunpoint. He also kidnapped and raped her. While A.S. was in jail in 2018, D.H. allowed mother and the children to reside with him because she was "not stable." He believed A.S. to be dangerous and gang affiliated. He was concerned for his children because of the "ongoing abuse." He wanted custody of his children if they were not in mother's care. His home was clean and appropriate, and without any safety concerns.

Mother told the Department she and the children lived with maternal great-grandmother. The home was cluttered, and it did not appear that anyone lived in the room mother claimed to occupy with the children. The room contained only a couch and stacked boxes and containers; clothes were strewn everywhere. A family friend reported that mother had not lived in the home for some time. It was unclear where the children and mother were living.

The family has a history of referrals to the Department. A July 2019 referral alleged that mother left the children in the care of maternal great-grandmother in November 2018, and was unstable, homeless, and suffering from substance abuse issues. She had not provided for the children since she left them in maternal great-grandmother's care. The referral was closed after the Department was unable to locate the family.

A May 2014 referral alleged that mother brought Sa.H. to the hospital with a fever and cough. Mother and Sa.H. were dirty and smelled badly. Mother had a flat affect, would not make eye contact, and was very guarded.

There was also a 2010 referral for severe neglect, after mother's infant son was found unresponsive at home and died soon after. The referral was evaluated out after it was reported there were no concerns of abuse or neglect.

In 2017, A.S. was the subject of a referral for another child, based on domestic violence against the child's mother, and threats to kill the child. The referral was closed as inconclusive.

Mother has a criminal history including assault with a deadly weapon, battery on a school employee, obstruction, and resisting an executive officer. A.S. has an extensive criminal history including burglary, possession of a controlled substance, grand and petty theft, obstruction, vandalism, and robbery. He was also convicted of domestic violence against mother in October 2019.

Mother minimized the October 2019 domestic violence incident. She claimed A.S. did not hit her, but that she had to run and hide from him because he was threatening to kill her.

Mother and A.S. had been in a relationship for five years and married for three. Mother told the Department she would give him another chance "if he got himself together." She admitted A.S. "puts his hands on me all the time." However, mother later recanted her admissions of ongoing abuse, claiming that the only time A.S. hit her was the referral incident.

Mother filed for a restraining order on April 23, 2020, after the Department threatened to detain the children. She also enrolled in a 52-week domestic violence program and parenting classes. However, mother permitted A.S. to retain access to her social media accounts and had not blocked or deleted him.

At the May 4, 2020 detention hearing, So.H. and Sa.H. were detained from mother and released to their father, D.H.,

6

under the supervision of the Department. S.S. was detained and placed with maternal grandmother. D.H. was found to be the presumed father of the older children, and A.S., who was not present at the hearing and had not been located by the Department, was found to be an alleged father of the youngest child.

The Department's jurisdiction/disposition report noted that A.S.'s whereabouts remained unknown. The Department concluded that D.H. did not require any services and could appropriately parent his daughters. D.H. was nonoffending, and was doing an "excellent job taking care of the children and meeting their needs." The Department recommended closing the case with a custody order as to So.H. and Sa.H.

So.H. revealed that mother told her to lie about the referral incident, and to tell law enforcement and the Department that she was not present during the incident. In fact, she was home with mother and A.S. at the time of the incident. The incident occurred at a friend's house, where they were living at the time. She did not see much, because she was in another room with her siblings, but she knew mother and A.S. were fighting, and called 911. She was scared because her mother got hurt and had bruises on her hand and forehead.

So.H. also told the Department that mother "does not smoke that much" and that mother would tell her to leave the room when she was smoking. Mother drinks alcohol, and once got angry and hit the television with a bottle.

At the contested jurisdictional hearing, mother testified that she enrolled in domestic violence classes after her children were detained and had attended seven sessions. She admitted her relationship with A.S. was "toxic." Regarding the April 2020

7

domestic violence incident, mother admitted her children were present. The family had been socializing at a friend's house when father called mother a "bitch" and slapped her. Mother "took the fight" to another room away from the children. The rest of the "fighting and yelling" occurred away from the children.

Mother told the children to lie about the incident because she was scared of losing them. She testified A.S. only became physical with her two times. However, he had emotionally abused her for a year, by lying and cheating. The children were not present for the other domestic violence incident. She planned to divorce A.S. and intended to abide by the restraining order and have no contact with him.

Mother testified she smoked marijuana twice a day for pain and for her appetite. She does not have a medical recommendation for marijuana, because it is "legal." Before it was legal, she had a doctor's recommendation for medical marijuana. Mother usually smokes outside on the patio or in the yard. The children are supervised by maternal grandmother, great-grandmother, maternal aunt, or D.H. when mother smokes. Mother said she does not get impaired to the point of being unable to care for the children.

Mother first used marijuana after the death of her son in 2010, when she was 18 or 19 years old. She started using on a daily basis when she was 23 or 24 years old, after Sa.H. was born, and had last used the day before the hearing because she was "so nervous."

The juvenile court sustained the section 300, subdivision (a) count, which alleged that "mother . . . and [A.S.] have a history of engaging in violent altercations in the children's presence." The petition described the referral incident, the time

8

A.S. held mother at gunpoint, and A.S.'s conviction of spousal battery.  The petition stated "[s]uch violent conduct on the part of [A.S.] and failure to protect by . . . mother, endangers the children's physical health and safety and places [them] at risk of serious physical harm, damage, and danger."

The court dismissed identical domestic violence allegations under section 300, subdivision (b) as "duplicative" of the sustained subdivision (a) count.

The court sustained other allegations under section 300, subdivision (b), that mother "has a history of substance abuse and is a current abuser of marijuana, which renders the mother incapable of providing regular care for the children."

The children were removed from mother.  Mother was ordered to receive reunification services for the youngest child, including domestic violence classes, random and on demand drug testing, parenting classes, individual counseling, and monitored visitation.  The juvenile court terminated jurisdiction over So.H. and Sa.H. with a custody order granting D.H. physical and legal custody, and providing monitored visitation for mother.

This timely appeal followed.

## DISCUSSION

### 1.    Jurisdiction

Mother contends there is not substantial evidence to support the findings under section 300, subdivision (a) as to So.H. and Sa.H.  She argues subdivision (a) applies only to nonaccidental harm inflicted by parents and guardians; she did not inflict nonaccidental harm on either child; and A.S. is not a

parent or guardian of either child.[2]  We need not reach the merits of this argument, because the court's findings under section 300, subdivision (b), based on mother's substance abuse, support jurisdiction.  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence."].)

The evidence summarized above is substantial evidence mother abused marijuana and the children were at risk of harm in her care.  (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 767; *In re Cole C.* (2009) 174 Cal.App.4th 900, 916 [discussing substantial evidence standard of review].)  The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child."  (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

This case is not like mother's cited cases, *In re Destiny S.* (2012) 210 Cal.App.4th 999 or *In re Drake M.*, *supra*, where the evidence did not establish the children's parents or guardians

---

[2]      "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:  [¶]  (a)  The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."  (§ 300, subd. (a).)

10

abused substances or were unable to care for their children. (*In re Destiny S.*, at p. 1003; *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 764.)

## 2.    **Removal**

Mother contends the Department did not meet its burden of proof for removal of the children, arguing she was able care for them and there were reasonable means to protect them without removal, such as family maintenance services.  We are not persuaded.

A child may not be removed from a parent or guardian unless there is clear and convincing evidence of "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's [or] guardian's . . . physical custody." (§ 361, subd. (c)(1).)  A juvenile court's removal order is reviewed under the substantial evidence standard of review.  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

As to A.S.'s child, S.S., mother does not challenge the jurisdictional findings based on the severe domestic violence perpetrated by A.S.  Mother had only recently started to address the violence in her relationship with A.S., minimized the severity of the abuse, and told her children to lie about it.  This, coupled with her substance use, support the juvenile court's conclusion that removal was necessary, and that there were no other reasonable means of protecting the children.

These same facts also support removal of the older children.  Even if the court had not sustained the section 300,

11

subdivision (a) allegations as to So.H. and Sa.H., the juvenile court was entitled to rely on the evidence of domestic violence when making its dispositional orders.  (§ 358, subds. (a) & (b); *In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183 [the juvenile court is not limited to the allegations of the sustained petition; rather, the court may consider all evidence on the question of the proper disposition].)

## 3.    Termination of Jurisdiction

Mother also challenges the order termination jurisdiction over the older children, and denying her reunification services, arguing the children had lived with her all their lives, were bonded to their younger sister, and there was evidence D.H. was aware of the domestic violence in mother's home but failed to protect his children.  Alternatively, mother contends that even if the order terminating jurisdiction was justified, the court should have ordered that mother and father share legal custody of the children.

The standard of review for juvenile court orders terminating jurisdiction is abuse of discretion.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)  Similarly, " '[t]he standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.'  [Citation.]  Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)  A court exceeds the limits of legal discretion if its determination is arbitrary, capricious, or patently absurd.  (*Stephanie M.,* at p. 318.)  The

12

appropriate test is whether the court exceeded the bounds of reason. (*Id*. at pp. 318–319.)

We see no abuse of discretion here. Substantial evidence supported a finding that father was an appropriate caregiver capable of meeting the needs of So.H. and Sa.H., and that mother was not then capable of safely caring for the children. Mother was awarded services to reunify with S.S., and she may petition the family court for a change of custody order as her circumstances improve.

## DISPOSITION

The orders are affirmed.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


WILEY, J.

13