Filed 10/6/21  In re K.T. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.T., et al., Persons Coming Under the Juvenile Court Law. | B311043 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>Q.T.,<br><br>　　　Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP00518) |

APPEAL from orders of the Superior Court of Los Angeles County.  Tamara E. Hall, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Appellant Q.T. is the father of K.T., born July 2019, and Kal. T., born August 2020. J.W. is the minors' mother. On March 2, 2021, the court declared the minors to be dependent children of the court pursuant to Welfare and Institutions Code section 300.[1] The court removed the minors from Q.T.'s custody. Q.T. appealed,[2] contending that the court's orders are not supported by substantial evidence.

We detail the court's two orders. We then turn to the evidence that Q.T. repeatedly committed acts of domestic violence. We explain why the domestic violence placed the minors at a substantial risk of serious harm. We conclude by affirming the court's orders.

## I.    The Order Declaring the Minors Dependent Children of the Court (§ 300)

The court found "by a preponderance of the evidence that all counts of the petition as pled are true." The two counts alleged by the petition are based on subdivisions (a) and (b)(1) of section 300.

Subdivision (a) of section 300 focuses on the substantial risk that the child will suffer serious physical harm inflicted nonaccidentally by the child's parent.[3] The pertinent part of

---

[1]    Statutory references are to the Welfare and Institutions Code.

[2]    The appeal is from the dispositional order, i.e., the judgment (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112) and the subsequent order after judgment removing the minors from Q.T.'s custody. (§ 395, subd. (a)(1).)

[3]    "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge

2

subdivision (b)(1) is the substantial risk that the child will suffer serious physical harm as a result of the failure of the parent to protect the child or adequately protect the child from the custodian with whom the child has been left.[4]

In addressing the evidence that supports the allegations of the petition, the court also considered evidence generated by Kylee F. (hereafter Kylee), born September 2013, whose father and mother are respectively L.P. and S.W., the mother of the two minors involved in this appeal. Kylee resides with mother S.W. Father L.P. and mother S.W. have a joint custody agreement regarding Kylee that is not pertinent to this appeal.

The petition relies on the same set of facts to support the allegations under subdivisions (a) and (b)(1) of section 300. The general thrust of these facts is that appellant Q.T. and mother S.W. have a history of engaging in violent verbal and physical altercations in the presence of the children. One specific incident

---

that person to be a dependent child of the court: [[¶]] "(a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a).)

[4] "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court. . . . [¶]] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise protect the child from the conduct of the custodian with whom the child has been left." (§ 300, subd. (b)(1).)

that occurred in November 2020[5] was when Q.T. pushed S.W. with his shoulders, while S.W. was holding the infant Kal. T., into a dresser, resulting in the dresser and a television falling, breaking the television.  On another occasion, Q.T. struck S.W. with a bag even though she was pregnant.  Kylee witnessed verbal altercations between Q.T. and S.W.  Kylee is afraid of Q.T.  S.W. has failed to protect the children from Q.T. and has allowed him unlimited access to the children.

In ruling on the petition, the court found that mother S.W. did not have the ability to protect her children and lacked insight into the problem of domestic violence that she was facing.  The court noted appellant Q.T.'s history of domestic violence with a former girlfriend.  The incident with the television for which S.W. tried to assume responsibility showed she was under the influence of Q.T., which is not unusual in domestic violence cases.  Kylee was found to be a credible witness.  The court noted that Q.T. and S.W. had had an encounter at a Denny's restaurant which ended with their arrest.

## II.     The Order Removing the Minors from the Physical Custody of Father Q.T. (§ 361)

The court removed both minors from the physical custody of their father, Q.T., under the authority of section 361, subdivision (c)(1).[6]  The court found that there was a substantial

---

[5]     The petition states this event occurred in December 2020. Subsequent witness statements place this event in November 2020.

[6]     "A dependent child shall not be taken from the physical custody of his or her parentswith whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following

4

danger to the physical health, safety and emotional well-being of the minors if the minors were returned home with Q.T.

The court also ordered that the minors were to remain in the home of their mother S.W.[7] and that the care and custody of the minors was under the supervision of the Los Angeles Departments of Children and Family Services (hereafter the Department).

The court ordered monitored visitation for Q.T. with the minors which were not to take place in S.W.'s home. S.W. was not to be present during the visitations.

The court ordered the Department to provide Q.T. with family enhancement services. The court also ordered Q.T. to complete a 52-week course in the domestic violence program.

## III. The Domestic Violence In Which Q.T. Engaged Justifies the Trial Court's Orders

Appellant points to the facts that the trial court based its findings on documentary evidence, that the court never saw Q.T. or S.W. in person, and only heard from Q.T. on the telephone. Appellant specifically questions the court's findings that Q.T. and S.W. were not credible in that such findings, in order to be compelling on appeal, usually rest on the trial court's personal observation of the person. Given these circumstances, appellant

---

circumstances listed in paragraphs (1) to (5), inclusive . . . [[¶]] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home." (§ 361, subd. (c)(1).)

[7]     This disposition is specifically authorized by subdivision (c)(1)(B) of section 361.

contends that we should independently review the record. We decline this invitation.

"[W]e review both the jurisdictional and dispositional orders for substantial evidence. [Citation.] In doing so, we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders. Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment. [Citation.] But substantial evidence 'is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] . . . "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

The court's orders are supported by substantial evidence. S.W.'s statement about the incident with the television shows that both Q.T. and S.W. acted out violently. This was S.W.'s statement about this incident: "We (mother and [Q.T.] father) were living together. The reported incident happened around November 2020.[8] We were talking about finances and the kids were with my grandma in the front house. Kylee has a tendency to be nosey and she came over to see what was taking place while we were having words. All of the things from the room were in the living room because the room was being painted. While in the living room, we (mother and [Q.]T. father) walked past each other and he bumped shoulders with me. I went into the dresser

---

[8] This incident is hereafter referred to as the November incident.

and the T.V. fell.  I got angry and threw his game console.  I was not holding the baby [Kal. T.].  The T.V. broke.  I called the cops and he left before they got there.  The police told me not to call them if we want to be together and advised us to seek counseling instead."

This was not an accidental, neutral encounter.  S.W.'s statement that "I went into the dresser" indicates a degree of force on Q.T.'s part, not just a casual bump or jostle.  That she then, admittedly angry, "threw his game console" suggests that S.W. thought she had been pushed, not simply bumped.  And of course she would not have called the police if it was nothing but a purely accidental encounter.  In short, the evidence supports the finding that this was a physical altercation between Q.T. and S.W.

Kylee put the same incident this way:  "I remember when they got a new T.V.  The room had to get painted and they [Q.T. and S.W.] got into a fight.  I was there.  His PS4 (video console).  He was always playing with his PS4.  I asked him to help because [Kal. T.] was crying.  He didn't want to help.  He kept playing.  I needed help from Q.T. to make the bottle for [Kal. T.].  She was one-year old.  She's still one-year-old.  My mom then came home from work and they got into a fight.  [Q.T.] shoved her onto the T.V. [Kal. T.] was in her hands.  The T.V. broke when he shoved her.  The T.V. fell.  That's the end of that story."

Q.T. admitted that the incident with the T.V. took place.  However, he claims he only accidentally bumped into S.W. which caused her to "back up" to a dresser which in turn made the T.V. fall.  Nonetheless, Q.T. admits that S.W. "was already mad at him" before the T.V. fell and she "grabbed his PlayStation and threw it outside the home."  Q.T.'s admission that he left the

7

house and did not return for two weeks because he did not want to go to jail further bolsters that the encounter was violent in nature.

As the Department report summarized it: "Although [S.W.] reports the arguments with [Q.T.] were not normally physical or dangerous, the family has a history of reported incidents to law enforcement that have been escalating over time. On one occasion, [S.W.] and [Q.T.] engaged in an argument outside of a Denny's restaurant and law enforcement was called which resulted in [Q.T.] being arrested."

Kylee reported another violent incident that occurred when S.W. was pregnant with Kal. T.: "In the morning we came back and [Q.T.] was angry because he made food and he threw the diaper bag at my mom. She was pregnant with Kal. T. My mom called the police. [Q.T.] was hiding in the bathroom with [K.T.] and I was really scared. The police asked questions and my mom told me not to tell the police that [Q.T.] was here." Although S.W. denied that this incident took place, the details in the statement make it more likely than not that Kylee got it right.

Q.T. engaged in domestic violence with another family of his in 2018. Q.T. has a child with another mother, L.H. In 2018, L.H. reported that Q.T. had threatened to shoot up L.H.'s house. L.H. also reported that domestic violence occurred two years previously. Q.T. acknowledged an arrest in 2018 for the violence involving L.H. He also acknowledged a court hearing in 2019 also involving L.H. during which the court ordered anger management and domestic violence classes.

In *In re Nathan E.* (2021) 61 Cal.App.5th 114 (*Nathan*), mother and father began arguing in the bedroom while their three children slept in a different bedroom. Father began yelling

at mother, pulled on a necklace she was wearing and, in doing so, scratched and clawed at her neck.  Father left the bedroom, she locked the door, and he then started punching the door before fleeing the apartment.  (*Nathan, supra*, 61 Cal.App.5th at p. 117.)  The trial court sustained allegations under subdivisions (a) and (b)(1) of section 300, as in the case at bar.  (*Nathan, supra,* 61 Cal.App.5th at p. 120.)  On appeal, mother claimed that since domestic violence is not aimed at the child, any harm could not be " 'inflicted nonaccidentally upon the child' " as subdivision (a) of section 300 requires.  (*Ibid.*)

The issue was whether acts of domestic violence between the parents create a substantial risk of serious physical harm to the child.  Significantly, the children in *Nathan* were not present when the domestic violence occurred.  Nonetheless, the court in *Nathan* held that domestic violence between the parents did create the risk of serious physical harm "inflicted nonaccidentally" upon the child by the parents.  The court held that while many cases have found dependency jurisdiction in domestic violence cases under subdivision (b)(1), domestic violence between the parents is also grounds for such jurisdiction under subdivision (a) of section 300.  (*Nathan*, *supra,* 61 Cal.App.5th at pp. 121–122.)  The *Nathan* court cited *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598–599 in support which had held that *exposure* of the child to domestic violence puts the child to a substantial risk of suffering serious physical harm inflicted nonaccidentally by the parent.  (*Ibid.*)  The court in *Nathan* "firmly" rejected mother's contention that domestic violence cannot be the basis for jurisdiction under subdivision (a) of section 300.  (*Nathan, supra,* 61 Cal.App.5th at p. 122.)

9

*Nathan* stands for the sensible proposition that when the parents are embroiled in domestic violence, the child or children are in danger of serious physical harm. This is so even if the children are not present when the domestic violence occurs. The reason for this is the vulnerability of the child in the face of the unpredictable outcomes of domestic violence. No one can predict the course that parental violence will take once it has been unleashed. Nor is there any assurance that the violence will not be repeated with unknown consequences, which is a subject we address below.

*Nathan* is not the only court that has held that even when the acts of violence occur in the child's absence, the child is at substantial risk of physical harm. In *In re T.V.* (2013) 217 Cal.App.4th 126, 134, father punched mother and knocked her to the ground. The minor was not there when this happened. Nonetheless, the court concluded that "the domestic violence between the parents was ongoing and likely to continue, thus placing [the minor] at substantial risk of physical harm." (*Ibid.*)

It is the likelihood of a recurrence of domestic violence that justifies judicial intervention. Past violent behavior is the best predictor of future violence. (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on a different ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1012.) In this case, there is solid evidence that the November incident was not an isolated instance. There was the Denny's restaurant episode which ended in Q.T.'s arrest, the time that Q.T. threw a diaper bag at S.W. and, very significantly, the bad history with L.H. in 2018 which resulted, among other things, in anger management classes for Q.T. And S.W. confirms that there have been repeated angry confrontations, at least two of which ended by S.W. calling the

10

police. There is also the fact that Q.T. continues to deny that he engages in domestic violence. "A parent's denial of domestic violence increases the risk of recurring." (*In re V.L.* (2020) 54 Cal.App.5th 147, 156.)

The court in this case recognized the danger of recurrence. The court ordered Q.T. to complete another 52-week course in domestic violence prevention. In doing so, the court denied Q.T. credit for the previous course in anger management since that course evidently did not make an impression on Q.T. (*In re V.L., supra,* 54 Cal.App.5th at p. 156.)

We do not agree with Q.T.'s contention that there was no physical violence, only argument, between Q.T. and S.W. The November incident was a physically violent event, as was the act of throwing a diaper bag at S.W. While it is true, as Q.T. states, that these acts did not cause physical harm , "[a]ctual harm to a child is not necessary before a child can be removed." (*In re V.L., supra,* 54 Cal.App.5th at p. 154.) "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843, cited in *In re I.J.* (2013) 56 Cal.4th 766, 773.)

We conclude that both of the court's orders on appeal were justified, and even compelled, by the substantial risk that the minors will suffer serious physical harm as a result of the domestic violence perpetrated by Q.T.[9] The threat of domestic violence certainly satisfies subdivision (a) of section 300 in

---

[9] Q.T. argues the court failed to state facts to support its removal order under section 361, subdivision (e). The court, however, incorporated its jurisdictional findings and rationale into the dispositional hearing.

exposing the minors to the risk of serious physical harm. The circumstance that S.W. was to an extent complicit in the violent encounters with Q.T. indicates that she failed to protect the minors from Q.T.'s violence. Her admission that she was so angry after being pushed into the dresser that she retaliated violently by throwing the game console shows her inability to distance herself from the violence generated by Q.T. In our view, this shows she is unable to protect the minors from Q.T.'s violence and which satisfies subdivision (b)(1) of section 300.

## IV. The Remainder of the Court's Orders Are Affirmed

Q.T. contends that the visitation order was an abuse of discretion, principally because, according to Q.T., the orders of the court finding the children to be dependents of the court and removing them from Q.T.'s custody are not supported by the evidence. For the reasons set forth above, we do not agree with the premise of this argument and therefore reject it.

Independently from the foregoing, we find the court's orders, including the visitation order, to be warranted by the facts. It is evident that the overall plan for the family formulated by the court was to keep the children with their mother, and keep that family unit intact, while distancing Q.T. from the family unit without depriving him of access to the children. Given that there are no complaints about S.W.'s performance as a mother, with the exception of tolerating Q.T.'s violence, it is of course best to keep children of such a tender age with their mother. Keeping the Department in the picture is also a sound decision in that S.W. cannot be completely trusted to keep the children safe from Q.T. Limiting Q.T. to supervised visits in locations other than S.W.'s home is also the right decision since it protects the children and still maintains Q.T.'s access to them. The entire

12

plan, taken as a whole, leaves the door open to positive changes, including changes in and improvement of behavior by Q.T. Requiring Q.T. to complete another course in the prevention of domestic violence is yet another positive aspect of the court's plan.

Viewed as a whole, the court's orders, including the visitation order, are a sound exercise of the court's discretion based on the facts and circumstances of this case.

## DISPOSITION

The orders are affirmed.


OHTA, J.*

We Concur:


GRIMES, Acting P. J.



WILEY, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.