Filed 5/16/23  In re K.A. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | B316357 (c/w B320391) (Los Angeles County Super. Ct. No. 21CCJP03374A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. E.C. et al., Defendants and Appellants. | |

APPEALS from findings and orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed in part and dismissed in part.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant E.C.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant G.A.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendants and appellants E.C. (mother) and G.A. (father)[1] appeal from the juvenile court's October 27, 2021, jurisdictional findings and dispositional orders in which their daughter, K.A. (minor, born Mar. 2014), was declared a dependent of the court and removed from parental custody. Father also challenges the court's finding at the six-month status review hearing on April 27, 2022, that the Los Angeles County Department of Children and Family Services (DCFS) had provided reasonable services to him.

On November 15, 2022, during the pendency of this appeal, the juvenile court ordered minor returned to father's custody.[2]

---

[1]     We refer to mother and father collectively as the parents.

[2]     On December 28, 2022, DCFS filed a motion requesting that we take judicial notice of the juvenile court's November 15, 2022, minute order. We hereby grant the motion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *In re M.F.* (2022) 74 Cal.App.5th

2

DCFS thereafter moved for partial dismissal of father's appeal as moot.

We affirm the juvenile court's jurisdictional findings and dispositional order removing minor from mother's custody. We conclude that father's challenges to the dispositional order removing minor from his custody and to the juvenile court's reasonable services finding are moot in light of minor's subsequent return to father. We, therefore, grant DCFS's motion for partial dismissal and dismiss father's appeal concerning these two issues.

## BACKGROUND

*Existing Family Law Order*

Pursuant to an existing family law order, mother and father shared joint legal custody. Mother had physical custody of minor, with father having overnight visits with minor every first and fourth weekend of the month.

*Referral*

In June 2021, DCFS received a referral alleging that minor was visiting her maternal aunt (aunt) in Kentucky when the child disclosed that, in May 2021, father had touched her vaginal area under her clothing while they slept in the same bed.

*Initial Investigation*

In response to the referral, a DCFS social worker contacted aunt by telephone on June 23, 2021. Aunt explained that minor and minor's half-sibling had been in her care in Kentucky since

---

86, 110 ["While appellate courts rarely consider postjudgment evidence or evidence developed after the ruling challenged on appeal, such evidence is admissible for the limited purpose of determining whether the subsequent development has rendered an appeal partially or entirely moot"].)

June 9, 2021.[3]  Minor told aunt that "'Daddy touched me[,]'" which aunt immediately reported to mother.  Mother asked aunt to take minor "to be checked out."  When examined, minor "complained about tenderness around her labia" and was diagnosed with vaginitis.

Aunt reported that mother had recently moved to New Mexico with her current boyfriend, leaving notarized letters granting the maternal grandmother (grandmother) legal guardianship of minor and minor's half-sibling.  Aunt suspected that mother was using methamphetamine.

Minor returned to grandmother's home in California on July 1, 2021,[4] where according to grandmother, she and mother had been living for the past year and a half.  Grandmother told the social worker that both mother and father had used methamphetamine in the past and that father, who had anger issues, currently smoked marijuana.  Grandmother did not know if mother was currently using drugs.  Mother had left for New Mexico with her new boyfriend, who had been recently released from prison.

Minor told the social worker that aunt had taken her to the doctor "'because I had an infection and I was hurting.'"  Mother had given her a shower and told father about minor's pain.

---

[3]      Minor's younger half-sibling is not the subject of these dependency proceedings.

[4]      On July 2, 2021, minor's court-appointed counsel in a family law matter sought a temporary emergency order that minor be placed with grandmother pending investigation into the sexual abuse allegations.  The family court ordered that neither mother nor father visit or communicate with minor until a hearing later that month.

4

Minor also told father, but he did not buy her medicine. Minor did not remember how long she had been in pain.

In a subsequent forensic sexual abuse interview, minor said she had "an 'infection'" in her vaginal area but that it no longer hurt. She stated that father had been "touching it 'down there[]'" and that he touched her underneath her panties while she slept. Father "touched her 'body part' with his hand and it felt weird."

The social worker spoke with mother in mid-July 2021. Mother was in New Mexico and did not have imminent plans to return to California. Mother stated that she did not have a good relationship with father, who hated everyone and was violent and verbally abusive. Mother admitted to using methamphetamine in the past, but stated that she had been "clean" for two years. Mother had told father about minor's infection; he responded "that it was not his problem because [minor] live[d] with her and it was her responsibility to attend to her needs." Mother acknowledged that aunt could "provide a better life for her children." When she was ready, mother planned to petition for the children's return to her care.

Father reported to the social worker that he was in "an endless battle" with mother for custody of minor. He denied ever touching minor under her clothes. He believed that mother's family had made up the allegations to keep minor away from him. Father had previously complained to mother about minor's poor hygiene and head lice. Father admitted to prior substance abuse; however, he currently only smoked marijuana when he could afford it.

*Dependency Petition*

On July 21, 2021, DCFS filed a dependency petition seeking the juvenile court's exercise of jurisdiction over minor

5

pursuant to Welfare and Institutions Code section 300, subdivision (b)(1)[5] (failure to protect), based on the parents' medical neglect of minor, and pursuant to section 300, subdivisions (b)(1) and (d) (sexual abuse), based on father's sexual abuse of minor and mother's failure to protect minor from it.

*Detention Hearing*

At the July 26, 2021, detention hearing, the juvenile court found that a prima facie showing had been made that minor was a person described by section 300. The court detained minor from the parents, finding that remaining in their home would be contrary to her welfare. The parents were granted monitored visitation.

*Jurisdiction/Disposition Report*

The dependency investigator contacted several family members in August 2021.

According to aunt, minor arrived at her home in Kentucky on June 9, 2021. Aunt stated: "'I had already known in California . . . that [minor] had infection all around her vaginal area for a month and a half because [mother] told me. When she got to my house, it was late. Next day I gave her a bath. She complained about it (vagina) hurting. But that day I was putting butt paste for diaper rash to help. She never got treatment for her infection. She was laying on my bed. When she opened her leg so I can put it on her, she said, "Is the bruise still there?" I looked around and I said, "I can't see a bruise[]. . ." I asked her how she got the bruise[]. . .[ ]She said her daddy did it. I said what do you mean your daddy did it. I'm now panicking, so I

---

[5] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

6

recorded it. She pretty much said "he touched it." So I said what happened and recorded it.'" Aunt provided a video in which minor can be heard stating that father "'touched it . . . because he wanted to touch it.'" (Bolding and italics omitted.) Aunt also reported that minor told her that "only adults are allowed to touch her down there" and "'[m]y daddy said if an adult wanted to touch me down there then they can.'"

Mother reported that, in early May 2021, minor returned from father's home wearing the same underwear she had on when she had left. The underwear was "filled with gross stuff." Minor complained that her vaginal area itched, so mother purchased "itch medicine" and told minor that they would go to the doctor if it did not improve in two days. Because minor "didn't say anything about it," they "didn't do anything" and minor left for Kentucky. Minor had not previously disclosed any sexual abuse.

Father acted in a hostile manner toward the dependency investigator. For example, when the investigator called to introduce herself and to schedule an interview, father stated: "'I'm fucking tired of this shit.'" In text messages, he claimed that mother and her family were "the only ones messing up [his] child's life." (Bolding and italics omitted.) He stated that he had scratched minor's back, but he denied touching her inappropriately. He opined that the allegations were made in response to his claim against mother for child concealment when minor was taken to Kentucky. According to father, "Karma comes in many different forms and it will get to [mother] for doing this to me."

In text messages between the parents from May 2021, mother informed father that minor had "a HORRIBLE infection

down there" and that she had returned home with the same underwear she had left wearing. Father responded that he had minor change her underwear the previous night. Father told mother that it was her responsibility because minor lived with her and, if minor lived with him, her hygiene "wouldn't be w[hat] it is[.]"

Medical records indicated that, on June 11, 2021, aunt brought minor to a doctor, who diagnosed minor with vulvovaginitis.

According to an officer with the Los Angeles Police Department, the investigation into the allegations of sexual abuse had been closed, as there was insufficient evidence to complete a criminal report against father.

*Last Minute Information for the Court (Sept. 2, 2021)*

DCFS provided the juvenile court with a transcript of the July 6, 2021, forensic interview conducted with minor. Minor stated that she experienced pain when her "dad was touching it down there." It occurred at nighttime when father was scratching minor's back.

*Adjudication Hearing*

After entertaining oral argument at the adjudication hearing on October 27, 2021, the juvenile court explained that it found evidence that father inappropriately touched minor's vaginal area and that the temporal proximity between the touching and minor's infection gave rise to the inference that the touching caused the infection and resulting pain. The court sustained count b-1[6] of the petition as pled and count b-2[7] as

---

[6] The sustained b-1 count states: "[M]other . . . and father . . . medically neglected the child by failing to take the child to a medical doctor when the child reported pain in the

8

amended by interlineation and declared minor a dependent of the court under section 300, subdivision (b)(1). The court dismissed count d-1, which had been brought under section 300, subdivision (d), in accord with DCFS's request.[8]

The juvenile court removed minor from the parents' custody and ordered her suitably placed with grandmother. DCFS was ordered to provide reunification services to the parents. Father was granted monitored visitation; mother was granted unmonitored visitation with minor in grandmother's home so long as grandmother was home.

*Family Reunification Period*

In February 2022, the maternal grandparents' resource family approval application was denied. DCFS requested an Interstate Compact on the Placement of Children assessment for aunt and her husband in Kentucky, which the juvenile court ordered in March 2022.

---

child's vaginal area. On [June 11, 2021], the child was diagnosed [with] Vulvovaginitis. Such medical neglect of the child on the part of the mother and father[] endangers the child's physical health and safety, and places the child at risk of serious physical harm, damage, danger and medical neglect."

[7] The sustained b-2 count states: "[F]ather . . . inappropriately touched the child by touching the child's vagina, with the father's hands, and underneath the child's clothing. . . . Such inappropriate touching of the child by the father, . . . endangers the child's physical health and safety and places the child at substantial risk of serious harm, damage, danger, [and] inappropriate touching."

[8] The juvenile court explained that it did not find evidence that father touched minor for his own sexual gratification—in other words, there was "no evidence of sexual intent."

9

DCFS delayed visitation between father and minor because grandmother reported that minor "was extremely fearful of" father and had nightmares about father killing her. Minor also stated once that she did not want to visit with father. When a social worker spoke to minor in early March 2022, minor reported that she was no longer experiencing nightmares about father.

Father visited minor on March 29, 2022. This was his first monitored visit since August 2021. The social worker observed that minor was happy to see father and did not display any fear toward him. Father behaved appropriately.

As of April 2022, mother continued to reside in New Mexico. Mother had several video calls with minor each week. Mother completed a 52-week parenting program and was participating in individual counseling.

DCFS reported that father had "attempted" compliance with his court-ordered programs. Between November 2021 and March 2022, father tested positive for marijuana eight times when he submitted to random drug tests. Father stated that marijuana helped his anxiety, but he did not have a prescription for it. He reported contacting a few agencies regarding individual counseling, but he had not yet received a response. Father had not participated in his parenting program.

*Six-Month Status Review Hearing*

At the six-month status review hearing on April 27, 2022, the juvenile court found that continued jurisdiction was necessary and that returning minor to parental custody would create a substantial risk of detriment to her. The court found by clear and convincing evidence that the parents were not in substantial compliance with their case plans despite DCFS offering reasonable services and making reasonable efforts to

10

enable minor's return home.  The court ordered that the parents receive further family reunification services.

*Notices of Appeal*

On October 29, 2021, mother and father each filed a notice of appeal from the jurisdictional findings and the removal of minor from their custody at the adjudication hearing.  On May 5, 2022, father filed a notice of appeal from the juvenile court's April 27, 2022, findings and orders at the six-month status review hearing.[9]

*Subsequent Events*

At the 12-month status review hearing on November 15, 2022, the juvenile court found that father's progress had been substantial, terminated the suitable placement order, and ordered minor to be returned to father's home.

## DISCUSSION

I. *The jurisdictional findings are supported by substantial evidence.*

A. <u>Applicable law</u>

Under section 300, subdivision (b)(1), the juvenile court has jurisdiction over and may adjudge to be a dependent of the court a "child [who] has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . .  [¶]  . . . [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child" (§ 300, subd. (b)(1)(A)) or as a result of "[t]he willful or negligent failure of the parent . . . to provide the child with adequate . . . medical treatment" (§ 300, subd. (b)(1)(C)).

---

[9]     On August 8, 2022, we granted father's motion to consolidate the appeals arising from these notices of appeal.

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivision[] at issue here require[s] only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' [Citation.] 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

B. <u>Standard of review</u>

Jurisdictional findings must be made by a preponderance of the evidence. (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) We review those findings for substantial evidence—"evidence that is reasonable, credible and of solid value. [Citations.] We do not evaluate the credibility of witnesses, attempt to resolve conflicts in the evidence or determine the weight of the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence supporting a contrary finding." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is

12

supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 (*Alexis E.*); see also *In re D.P.* (2023) 14 Cal.5th 266, 284 ["where there are multiple findings against one parent; the validity of one finding may render moot the parent's attempt to challenge the others"].)

    C. <u>Analysis</u>

    Substantial evidence supports the juvenile court's jurisdictional findings based on the parents' medical neglect of minor.[10]

    By at least May of 2021, both parents were aware that minor experienced painful irritation in her vaginal area, with mother describing it to father as "HORRIBLE."  Instead of taking minor to a medical doctor to diagnose and treat the issue, the parents exchanged text messages blaming the other for the situation.  Minor reported that she told father about her pain, but he did not buy her medicine.  Mother bought "itch medicine" for minor, but the issue had not resolved and neither parent had sought professional treatment for minor when she was sent across the country to aunt's home in Kentucky on June 9, 2021. It was aunt who finally took minor to a doctor on June 11, 2021, who diagnosed minor as suffering from vulvovaginitis.

---

[10]    Because we affirm the juvenile court's exercise of jurisdiction on this basis, we need not reach the merits of father's challenge to the juvenile court's exercise of jurisdiction based on allegations that he inappropriately touched minor and decline to exercise our discretion to do so.  (See *In re D.P.*, *supra*, 14 Cal.5th at pp. 283–284; *Alexis E.*, *supra*, 171 Cal.App.4th at p. 451.)

13

The evidence before the juvenile court was sufficient to support the finding that the parents "willful[ly] or negligent[ly] fail[ed]" to provide minor "with adequate . . . medical treatment[,]" placing her at substantial risk of serious physical harm. (§ 300, subd. (b)(1)(C).)

In resisting this conclusion, the parents attempt to minimize the severity of minor's medical condition and resulting pain. Father argues that mother took reasonable steps to address minor's vaginal pain short of taking her to a doctor. Mother points to statements that minor received regular medical care and was up-to-date on her vaccinations. Both parents contend that no serious physical harm befell minor, with father speculating that because antibiotics were not prescribed, she must not have suffered any type of serious untreated infection. The parents disregard the reasonable inferences that minor's vulvovaginitis did not progress to an even more serious medical issue because of aunt's prompt action once minor arrived in Kentucky despite the parents' medical neglect and that there was a risk of reoccurrence.[11]

More generally, the parents' arguments essentially ask us to reweigh the evidence, which we may not do under our standard of review. (*In re R.V.*, *supra*, 208 Cal.App.4th at p. 843.) Instead,

_____

[11] Mother contrasts the instant case with *In re Petra B.* (1989) 216 Cal.App.3d 1163, 1170, in which a juvenile court exercised jurisdiction where the record reflected a lack of medical treatment along with a doctor's statement about the risk of infection, and *In re Eric B.* (1987) 189 Cal.App.3d 996, involving a child with a history of cancer. Neither case, however, stands for the proposition that a finding of medical neglect under section 300, subdivision (b)(1), requires an expert opinion about medical risk or must involve a life-threatening condition.

14

we are required to view the evidence in the light most favorable to the juvenile court's ruling. (*Ibid.*) Having identified substantial evidence to support the finding of jurisdiction, "it is of no consequence" that other evidence or inferences drawn from the evidence might have supported a contrary finding. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874, italics omitted.)

II. *The dispositional order removing minor from mother's custody is supported by substantial evidence.*

A. <u>Applicable law</u>

Before removing a minor from a parent's custody, the juvenile court is required to "make one of five specified findings by clear and convincing evidence. (§ 361, subd. (c).) One ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child. (§ 361, subd. (c)(1).) "'Clear and convincing' evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind. [Citations.]' [Citation.] Actual harm to a child is not necessary before a child can be removed. 'Reasonable apprehension stands as an accepted basis for the exercise of state power.'" (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

B. <u>Standard of review</u>

We review a dispositional order removing a minor from parental custody for substantial evidence. (*In re V.L., supra*, 54 Cal.App.5th at p. 154.) Because the juvenile court must make its finding that a ground for removal exists under the clear and convincing evidence standard of proof (§ 361, subd. (c)), "the

15

question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011).

C. <u>Analysis</u>

The same evidence that supports the juvenile court's exercise of dependency jurisdiction over minor based on medical neglect also constitutes substantial evidence from which the court could find it highly probable that minor would be at risk of substantial danger if she returned to mother's custody. (§ 361, subd. (c)(1).)

Mother contends that there were alternative means to protect minor short of removal, suggesting that "the [juvenile] court could have ordered that [m]other regularly update the social worker about [minor]'s medical status and/or could have conditioned placement with [m]other on [m]other's addressing of such needs." But such alternatives would be reliant on mother's self-reporting and ability to perceive the risks minor faced and what constituted a proper response to those risks. Given persistent questions about mother's substance abuse, the fact that she remained out-of-state, and father's long-standing concerns about minor's hygiene in mother's care, the court could reasonably conclude that such measures would not abate the risk to minor.

III. *Father's challenges to the removal of minor from his custody and to the reasonable services finding are moot.*

It is a court's duty, including in the dependency context, "'"to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law

16

which cannot affect the matter in issue in the case before it.'" [Citation.]" (*In re D.P.*, *supra*, 14 Cal.5th at p. 276.)

"Due to the dynamic nature of juvenile dependency proceedings, a subsequent order of the juvenile court may render an issue on appeal moot. [Citation.]" (*In re M.F.*, *supra*, 74 Cal.App.5th at p. 110.) "[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.) "For relief to be 'effective', two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks. [Citation.]" (*In re D.P.*, *supra*, 14 Cal.5th at p. 276.)

In light of minor's return to father's custody at the 12-month status review hearing on November 15, 2022, father's challenges to the dispositional order removing minor from him and to the juvenile court's reasonable services finding at the six-month status review hearing are moot. Father has already obtained the relief he would if we reversed the dispositional order: the return of minor to his custody. As for the reasonable services finding, "[t]he remedy for the failure to provide court-ordered reunification services to a parent is to provide an additional period of reunification services to that parent and to make a finding on the record that reasonable services were not offered or provided to that parent." (*In re A.G.* (2017) 12 Cal.App.5th 994, 1005, italics omitted.) Again, because minor has already been reunified with father, such relief would have no practical, tangible impact on father's legal status and would therefore be ineffective. (See *In re D.P.*, *supra*, 14 Cal.5th at

17

p. 277 ["relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status[]'"].)

Father contends that these issues are not moot because they could prejudice him in future proceedings. Specifically, he argues that the removal order could provide the foundation for termination of parental rights and the bypass of reunification services in a future dependency matter, and that the reasonable services finding is a prerequisite for the termination of parental rights at a section 366.26 hearing. That any of these concerns would materialize given that minor has been returned to father's custody is too speculative to avoid mootness. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 278 [rejecting proposition "that speculative future harm is sufficient to avoid mootness"].)

We also decline to exercise discretionary review of these moot issues. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 287 ["A reviewing court must decide on a case-by-case basis whether it is appropriate to exercise discretionary review to reach the merits of a moot appeal"].)

**DISPOSITION**

The juvenile court's jurisdictional findings and dispositional order removing minor from mother's custody are affirmed.  DCFS's motion for partial dismissal is granted; we dismiss as moot father's appeal of the dispositional order removing minor from father's custody and of the reasonable services finding at the six-month status review hearing.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ