Filed 7/16/24  In re Edward G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re EDWARD G., JR., et al., Persons Coming Under the Juvenile Court Law. | B326338 (Los Angeles County Super. Ct. No. 22CCJP04382A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  EDWARD G., SR.,  Defendant and Appellant. | |

APPEAL from findings of the Superior Court of Los Angeles County.  Hernan D. Vera, Judge.  Affirmed.

Laurel Thorpe and Susan M. O'Brien, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

Edward G., Sr., (father) appeals from the juvenile court's jurisdictional findings regarding his three children, Edward G., Jr., (Edward, born Oct. 2016), Amelia G. (Amelia, born Jan. 2018), and Alexander G. (Alexander, born Mar. 2020) (collectively the children). He contends that the jurisdictional findings are not supported by sufficient evidence. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

## I.     Referral and Investigation

On September 27, 2022, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that father hit Edward on the head with a metal water bottle. The referring party found a corresponding red bump on Edward's head.

That same day, a DCFS social worker contacted the children's mother, Rebecca V. (mother), who said that father did not live with the family but visited often. Mother admitted that "one of [her and father's] biggest arguments is their methods of disciplining the children." She said that she did not witness the incident with the bottle. Mother did "argue with father" afterwards, but believed it was an accident.

When the social worker interviewed father, he "stated that he was waiting for social workers to come . . . because he knew

2

that he[] 'f***ed up[]'" and "made a mistake by 'tapping' . . . Edward on the side of his head[.]" Father said that while he was watching the children, he saw Edward trip his younger sister Amelia; "he instantly got angry and his first reaction was to 'bop' . . . Edward on the side of his head." Father expressed remorse, said that he was "open to parenting/anger classes[,]" and insisted that this was "an isolated incident and [that] he doesn't hit or abuse his children." However, father later admitted that he 'had hit [Edward] on the arm" in the past, and said that he had a rule to use "physical [discipline] when it is something deeper."

Later that day, Edward was taken for a medical examination, at which he said: "My dad hit me with a metal bottle. I got a bump. He hit me once. My dad was mad I tripped my sister. He used to hit me a lot [of] times. He hit me on the mouth. No marks. He only hits me on the arm. He hits me on my arms . . . . [Mother] told me not to say anything that I had a bump from my . . . [f]ather to my teacher." Medical personnel determined that the swelling on Edward's head was the result of "[p]hysical abuse[.]"

In October 2022, father enrolled in parenting classes.

## II. Dependency Petition

On November 7, 2022, DCFS filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), and (j) (abuse of sibling), seeking the exercise of juvenile dependency jurisdiction over the children.[1] Counts a-1 and b-1 alleged that father "physically abused . . . Edward by striking [his] head with a metal water container" and had "struck the child" on his

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

"mouth and arms" on "prior occasions[.]"  DCFS argued that
"[s]uch physical abuse . . . endangers [Edward's] physical health,
safety and well-being, creates a detrimental home environment
and places [him] and [his] siblings . . . at risk of serious physical
harm, damage, danger and physical abuse."  Count j-1 alleged
that father's abuse of Edward also placed his younger siblings at
risk.[2]

Three weeks later, the juvenile court ordered the children
remain released to the parents on the condition that no corporal
punishment be used against the children.  In December 2022,
mother complained that it had been "difficult to discipline
Ed[ward]" under the order prohibiting physical punishment
"because he feels as though she and [father] could not reprimand
him at all."

### III.  Jurisdiction/Disposition Hearing

In January 2023, the juvenile court held a combined
jurisdiction and disposition hearing on the dependency petition,
at which it heard argument from the children's counsel, mother's
counsel, father's counsel, and DCFS.

The juvenile court amended the allegation under section
300, subdivision (a) of the dependency petition to read that father
"excessively discipline[d]" rather than "physically abused"
Edward.  The juvenile court noted that it had been "swayed by"
Edward's statements of prior physical discipline during his
medical examination, which it found to be "credible[.]"  It also
noted that "the injury [in this case] could have been much worse
given that the water bottle was metal."

The juvenile court recognized that "father ha[d] enrolled in
parenting" classes, "commend[ed] him for that[,]" and agreed that
the underlying incident "was not anything egregious[.]"

---

[2]      The petition did not make any allegations as to mother.

4

Nonetheless, the court concluded that it did "satisfy the legal requirements for a court under" section 300, subdivision (a). It explained that it was important for "the parents to understand, especially [father], that . . . [i]t's just not okay to discipline by smacking a child in the mouth or in any other way" outside of "spanking . . . in limited situations."

The juvenile court then sustained counts a-1 and j-1,[3] asserted dependency jurisdiction over the children, and ordered the children to remain placed with the parents while they received family maintenance services.[4]

Father timely appealed.

## DISCUSSION

### I.     Relevant Law

Section 300 authorizes the juvenile court to assume jurisdiction over and adjudge to be a dependent of the court children who meet certain enumerated statutory conditions, including that a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent" (§ 300, subd. (a)) and that a child's "sibling has been abused or neglected, as defined in subdivision (a) . . . and there is a substantial risk that

---

[3]     The juvenile court dismissed count b-1.

[4]     On July 12, 2023, the juvenile court terminated jurisdiction and returned the children to parental custody. Although this development renders father's appeal moot, in the interest of fairness, we exercise our discretion to reach the merits of the appeal. (*In re D.P.* (2023) 14 Cal.5th 266, 286 ["Principles of fairness may thus favor discretionary review of cases rendered moot by the prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal"].)

the child will be abused or neglected, as defined in those subdivisions" (§ 300, subd. (j)).

"[T]he question under section 300 is whether circumstances *at the time of the hearing* subject the child to the defined risk of harm." (*In re Emily L.* (2021) 73 Cal.App.5th 1, 15.) Still, "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected." (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

## II.    Standard of Review

Jurisdictional findings must be made by a preponderance of the evidence. (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) We review those findings for substantial evidence—"evidence that is reasonable, credible and of solid value. [Citations.] We do not evaluate the credibility of witnesses, attempt to resolve conflicts in the evidence or determine the weight of the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence supporting a contrary finding." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

## III.   Analysis

Substantial evidence supports the juvenile court's jurisdictional findings in this case. As to the finding that father nonaccidentally inflicted serious physical harm upon Edward (§ 300, subd. (a)), father himself admitted that when he saw Edward misbehaving, "he instantly got angry and his first reaction was to 'bop' . . . Edward on the side of his head" with a metal water bottle. The impact left a red, swollen bump on Edward's head. Edward also said that father had hit him in the mouth and/or arm on prior occasions, supporting the juvenile

court's subsidiary finding that father's conduct posed a substantial risk of future harm. (§ 300, subd. (a) ["For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on . . . a history of repeated inflictions of injuries on the child[]"].)

And this substantial evidence of nonaccidental physical harm inflicted against Edward also justifies taking jurisdiction over Amelia and Alexander. (§ 300, subd. (j).) There is no reason to believe that father's short temper and tendency to resort to corporal punishment would necessarily be limited to Edward, whose then four- and two-year-old siblings were equally capable of presenting father with frustrating behavioral problems. Father's rash conduct with Edward, as well as his "rule" that physical discipline should be used to correct "deeper" issues, raised a substantial risk that Amelia and Alexander could be similarly abused. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773 [juvenile court need not wait until "a child [is] actually . . . abused or neglected . . . [to] assume jurisdiction"].)

Father raises three arguments against our conclusion, all of which are unavailing. <u>First</u>, he contends that jurisdiction was inappropriate because Edward's injuries were the accidental result of misguided discipline, not the intentional result of malicious physical abuse. While Edward's injury undoubtedly resulted from father's disciplinary efforts,[5] that does not mean that his conduct falls outside the bounds of section 300, subdivision (a). (See *In re D.M.* (2015) 242 Cal.App.4th 634, 641 ["Where parental discipline exceeds [reasonable] limits, juvenile

---

[5] The juvenile court expressly amended the allegations in the dependency petition to reflect that Edward's injuries were the result of "excessive discipline" rather than physical abuse.

7

courts have not hesitated to uphold the assertion of dependency jurisdiction"].)

Father does not argue that hitting Edward in the head with a metal water bottle constituted reasonable discipline, but maintains that the incident was not severe enough to warrant an adverse jurisdictional finding under section 300, subdivision (a).

The plain language of section 300, subdivision (a) only protects a parent's use of physical discipline when limited to "age-appropriate spanking to the buttocks [that does not cause] serious physical injury." (See also *In re D.M.*, *supra*, 242 Cal.App.4th at p. 640 [a "parent's spanking of her children on the buttocks with her bare hand and with a sandal" may not "constitute[] 'serious physical harm' sufficient to invoke dependency jurisdiction under section 300, subdivision[] (a)"]; *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 92 [spanking with a wooden spoon resulting in bruising may not "necessarily exceed[] the bounds of reasonable parental discipline"].)

The statute does not protect a parent when he, in anger, strikes a child on the head with a bottle—particularly not when he has a history of hitting the child.[6] (Contra, *In re Isabella F.*, *supra*, 226 Cal.App.4th at p. 139 [jurisdictional finding struck where "nothing in the record . . . suggest[ed]" that one instance of excessive discipline was other than "an isolated incident"].)

Second, father argues that Edward's claims that father hit him on previous occasions do not constitute substantial evidence

---

[6] Father suggests that the injury he inflicted on Edward did not constitute "serious physical harm" (§ 300, subd. (a)). But section 300, subdivision (a) can apply when, as here, the injuries are "less serious . . . but there is a history of repeated abuse." (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 139.)

8

supporting the existence of a current risk to the children. We disagree. (See *In re S.A.* (2010) 182 Cal.App.4th 1128, 1148 ["'The testimony of a single witness is sufficient to uphold a judgment'"].)

Father asserts that, by admitting that father had never hit him hard enough to leave a mark prior to the incident with the water bottle, Edward essentially corroborated father's claim that he had previously only "used reasonable, non-abusive corporal punishment, sparingly[.]" While the juvenile court could have interpreted Edward's statements that way, other evidence in the record supports a competing inference that father's prior discipline had been excessive. (*In re Madison S.* (2017) 15 Cal.App.5th 308, 318 ["Substantial evidence may include inferences, so long as any such inferences are based on logic and reason and rest on the evidence"].)

Namely, the record demonstrates that mother and father repeatedly fought over how to properly discipline the children; that father's first reaction at seeing Edward misbehave in one instance was to angrily hit him with whatever object father was holding at the time; that father had an established "rule" of hitting Edward to correct "deeper" behavior issues; and that mother and father struggled to correct Edward's misbehavior without using corporal discipline. In this context, the juvenile court was justified in interpreting Edward's statement that father "used to hit me a lot [of] times" as disclosing prior incidents of unreasonable physical discipline. (*In re R.V.*, *supra*, 208 Cal.App.4th at p. 843 [under a substantial evidence standard of review, we do not "attempt to resolve conflicts in the evidence or determine the weight of the evidence"].)

Father also contends that Edward's statements are unreliable and inherently contradictory because he said that father "only hits me on the arm" but also "hit me on the mouth."

9

We are not persuaded that this contradiction renders Edward's testimony incredible; although the five-year-old's statements are jumbled as to precisely *where* father hit him, he clearly communicated that father had hit him often. Father himself confirmed that he had a "rule" of "hit[ting] [Edward's] arms" to correct "deeper" behavior problems.

And in any event, to the extent that Edward's testimony is not entirely consistent, that issue was for the juvenile court to resolve. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878, overruled on other grounds by *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124 ["It is for the trier of fact to consider internal inconsistencies in testimony, to resolve them if this is possible, and to determine what weight should be given to such testimony"]; *In re Frederick G.* (1979) 96 Cal.App.3d 353, 366 ["The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions"].)

Lastly, father contends that the juvenile court could not have found that he continued to pose a risk at the time of the jurisdiction hearing, because he had enrolled in parenting classes and was abiding by an order prohibiting the use of corporal punishment. We agree with the juvenile court that father's proactive enrollment in parenting classes is commendable. However, we note that there is no indication in the record that he had completed the course—or even attended one class—by the time of the jurisdiction hearing.[7]

---

[7]     In his reply brief, father blames DCFS for this dearth of information, arguing that he should not be judged by DCFS's failure to report on his efforts. However, at the jurisdiction hearing, father's counsel presented no evidence that father had attended or completed any classes, arguing only that father had

10

Moreover, the order forbidding father from using corporal punishment was not necessarily sufficient to mitigate all future risk to Edward and his siblings. At least once, father resorted to hitting Edward in anger when frustrated by the child's conduct, despite knowing that it was the wrong thing to do. And, just one month before the hearing, mother reported that she and father struggled to discipline Edward without using corporal punishment. Under these circumstances, the juvenile court was justified in concluding that the children remained at risk of nonaccidental harm inflicted by father in a moment of frustration. (*In re I.J., supra,* 56 Cal.4th at p. 773 ["[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction"].)

**DISPOSITION**

The findings are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

_____

"enrolled in a parenting class." Independently from DCFS's reports, this suggests that father had not meaningfully progressed in parenting classes.