Filed 6/3/25  In re S.P. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.P., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTHONY S.,<br><br>    Defendant and Appellant. | F089104<br><br>(Super. Ct. No. JD144593-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Meehan, J. and DeSantos, J.

Anthony S., presumed father of minor S.P., appeals from the juvenile court's order terminating his parental rights (Welf. & Inst.[1] Code, § 366.26). On appeal, he contends the court erred by finding the beneficial parent-child relationship exception to termination of parental rights did not apply.[2]

Finding no error, we affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2023, the Kern County Department of Human Services (department) filed a juvenile dependency petition on behalf of then nine-month-old S.P. It was alleged he came within the juvenile court's jurisdiction under section 300, subdivision (b) [failure to protect] due to risk of harm from both parents' substance abuse and mother's failure to provide adequate shelter as her home was deemed uninhabitable. S.P. had been splitting time between living with his paternal grandmother, with whom father resided, and the maternal uncle.

The juvenile court ordered S.P. detained on May 26, 2023, and ordered the parents to have twice weekly two-hour supervised visitation. S.P. was placed with the maternal uncle on June 1, 2023. Father began visiting with S.P. consistently, and the visits went well, but he did not participate in his voluntary case plan.

On July 31, 2023, the date set for the jurisdiction hearing, father was elevated to presumed status. He waived his right to a jurisdiction hearing, and the juvenile court found all allegations in the petition true and that S.P. was described by section 300, subdivision (b). The matter was continued as to disposition.

The disposition hearing was conducted on November 29, 2023. S.P. was adjudged a dependent of the court and ordered removed from the parents' physical custody. Father

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

[2]    To our knowledge, S.P.'s mother has not separately appealed. We limit our discussion of her as it is relevant to the issue father raises on appeal.

was ordered six months of reunification services, including parenting and child neglect classes, random drug testing, and substance abuse services in the event he provided a positive drug test. Mother was not to be offered reunification services pursuant to section 361.5, subdivision (b)(12) and (15). Father's visitation order remained the same.

Father continued to visit regularly and completed parenting and neglect classes but declined to drug test. S.P. was doing well and thriving in the maternal uncle and aunt's care.

A contested six-month and 12-month status review hearing was conducted on July 10, 2024. Finding there was still a risk of harm if S.P. were to be returned to father's custody and that there was not a substantial probability he could be returned by the next review date, the juvenile court terminated father's services and set a section 366.26 hearing.[3][4] The visitation order was to remain the same.

The department's section 366.26 report recommended adoption as S.P.'s permanent plan and termination of parental rights. S.P.'s care providers wished to adopt him. He was reported as calm, happy, easily comforted by them, and had formed a parental relationship with them. The department reported father had maintained a relationship with S.P. and visited him regularly. Visits went well, and S.P. looked forward to and appeared to enjoy the visits. The report documented that during visits between

---

[3]  A placement hearing was conducted the same day as to whether S.P. should be placed with the paternal grandmother or remain with the maternal uncle. After hearing from the parties, the juvenile court determined that S.P.'s placement should remain the same.

[4]  Father sought extraordinary writ relief from the juvenile court's review hearing orders. He argued the court's factual findings were not supported by sufficient evidence, that his attorney provided ineffective assistance of counsel, and that the court erred by denying placement with the paternal grandmother. By written opinion, this court found no error and denied the petition for extraordinary writ. (*A.S. v. Superior Court* (Sept. 12, 2024, F088328) [nonpub. opn.].)

May 2024 and September 2024, father would play with S.P. and engage with him in an age-appropriate manner, care for him by changing his diaper and feeding him, and attempt to redirect him when he was doing something he was not supposed to. On one occasion, S.P. was observed running into the visitation room at the start of the visit.

It was further reported S.P. did not show signs of distress at the end of visits or when visits were cancelled and rarely talked or asked about father outside of visits. It was noted S.P. had been out of father's care twice as long as he was in his care and that due to S.P's young age, he would adjust to no longer visiting with father. The department opined it would not be detrimental to terminate parental rights.

The section 366.26 hearing was conducted on December 17, 2024. Father was not present. His counsel argued the beneficial parent-child relationship exception to termination of parental rights applied. She argued father visited consistently and regularly and although S.P. had not been reported to have distress outside of the visits, he "is used to having those visits." She further argued the quality of the visits was good.

County counsel and S.P.'s counsel requested the juvenile court follow the department's recommendations and terminate parental rights.

In ruling, the juvenile court found that father had regularly and consistently visited with S.P. and that the visits were positive but that the evidence did not show S.P. had a "substantial positive emotional attachment" to either parent given S.P.'s age and the time he had spent out of the parents' custody. The court went on to say that any detriment S.P. may experience was "heavily offset by … the benefits of adoption, having permanency, and reliability .…"

The juvenile court found S.P. was adoptable, terminated parental rights, and ordered adoption as his permanent plan.

## DISCUSSION

At a section 366.26 hearing, when the juvenile court finds by clear and convincing evidence the child is adoptable, it is generally required to terminate parental rights and

4.

order the child be placed for adoption unless a statutory exception applies. (§ 366.26, subd. (c)(1).) One of the statutory exceptions is the beneficial parent-child relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

A parent seeking to establish the beneficial parent-child relationship exception applies has the burden to prove by a preponderance of the evidence three elements to justify its application: (1) "regular visitation and contact with the child, taking into account the extent of visitation permitted"; (2) "that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) "that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*In re Caden C.* (2021) 11 Cal.5th 614, 632–633, 636–637 (*Caden C.*).)

We will focus first on the second element—whether a beneficial relationship exists. The juvenile court found father had proven the first element, and the parties appear to agree this was appropriate.

We review the second element for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at pp. 636, 639–641.) Under the substantial evidence standard of review, "a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*Id*. at p. 640.) We keep in mind that when a court finds the proponent of a fact has failed to meet their burden, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"; that is,

5.

"whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

Father has not demonstrated reversible error. As a threshold matter, he does not identify or apply the correct standard of review. Father argues the juvenile court erred in declining to apply the exception because "substantial evidence supported" its application, pointing out evidence from the record favorable to him and making favorable inferences from the same. This is *not* our standard of review. The party challenging the juvenile court's order has the burden to show there is insufficient evidence to support the court's decision. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103; *In re N.M.* (2011) 197 Cal.App.4th 159, 168.) We do not look for whether substantial evidence supports the appellant's position, but whether substantial evidence supports the factual findings made by the trial court. (See *In re R.V.* (2012) 208 Cal.App.4th 837, 843 [reviewing court must affirm the trial court's findings if supported by substantial evidence even when substantial evidence supports a contrary finding].)

Father has not set forth a reasoned argument as to how the *juvenile court's finding was not supported by substantial evidence*, much less how the evidence *compelled* the court to make the factual finding he believes it should have. An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.) Father has not done so.

In any event, however, here, the juvenile court's finding that father had not proven the second element was supported by substantial evidence. In determining the second element—whether the children would benefit from continuing the relationship because the child has a substantial, emotional, positive attachment to the parent—the court may consider factors such as " '[t]he age of the child, the portion of the child's life spent in the

6.

parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs,' " as well as "how children feel about, interact with, look to, or talk about their parents." (*Caden C.*, *supra*, 11 Cal.5th at p. 632.)

Here, as the juvenile court pointed out, the age and time spent out of father's custody was significant. S.P. was removed from father's care at nine months old. Father and the paternal grandmother shared physical custody time with the maternal uncle. At the time of removal, father identified the paternal grandmother as S.P.'s primary care provider and represented that she had already started the process to obtain legal guardianship of S.P. because, according to father, "he just recently got his new job and [was] still working on getting his life together." At the time of the section 366.26 hearing, S.P. had been in placement with the maternal uncle who had cared for him part time during the first nine months of his life, and full time for over a year and a half. As the department's report stated, this was about double the amount of time he had been in father's care. The evidence demonstrated the maternal uncle was capable of providing for all of S.P.'s needs, and S.P. was doing well despite seeing father only for supervised visits, supporting the inference that S.P. did not have any specific needs father had a unique capability of providing for. Additionally, the report indicated S.P. did not ask for father or exhibit distress when out of his presence. The court recognized that the interactions between father and S.P. were positive, but on the whole, that father had not proven S.P. had a substantial, emotional, positive attachment to father. This was reasonable, and the evidence presented did not compel the court to make a contrary finding.

Because the juvenile court found a beneficial relationship within the meaning of the statute did not exist, it was not required to determine whether the third element had been met. However, because the court did not find S.P. had a substantial positive emotional attachment to father, it was reasonable to conclude any detriment in severing their relationship would be outweighed by the benefits of adoption.

7.

In his reply brief, father continues to defend his proffered standard of review by asserting "the record—when viewed through the lens of … *Caden C.*[, *supra*,] 11 Cal.5th 614—demonstrates that father presented sufficient evidence to compel the application of the parental benefit exception." He goes on to say, without any citation, "While a deferential standard applies, this Court must independently review whether the trial court applied the correct legal standard to the facts and whether its ultimate exercise of discretion was sound. It was not." Specifically, father finds fault with the court only mentioning S.P.'s age and the amount of time S.P. had spent out of father's care in its on-the-record reasoning. Father also contends the discretionary weighing the court engaged in was "improperly truncated and insufficiently child-focused."

Father's attempt to reframe the issue as one of misapplication of the proper legal standard is not persuasive. We presume the court knew and followed the law. (See *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.) Father has not rebutted this presumption.

Nothing in the juvenile court's analysis convinces us that it did not diligently apply *Caden C.* or any aspect of the applicable legal standard. As we have stated above, age and time out of care are proper factors to consider in determining the second element per the *Caden C.* court. In the present case, the court could have reasonably determined these factors carried a high weight, and nothing suggests the court did not consider other relevant factors or follow relevant guidance from *Caden C.* in making its determination father had not met his burden to prove the second element applied. We note the court is not required to make any express findings when it concludes that parental rights termination would not be detrimental. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.) As we have stated, because the court did not find father had met his burden to prove the second element applied, and a parent is required to prove all three elements of the beneficial parent-child relationship exception, the court was justified in not applying the

exception without analyzing the evidence any further.  We do not find the court's ruling legally deficient nor that the record indicates it misapplied the law.

For the foregoing reasons, we find no error.

## **<u>DISPOSITION</u>**

The juvenile court's order is affirmed.